NO. 4-97-0941

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

BRIAN E. MATTIS, Individually and on     )   Appeal from

behalf of all others similarly situated, )   Circuit Court of

Plaintiff-Appellant,           )   Champaign County

v.                             )   No. 95L222

THE STATE UNIVERSITIES RETIREMENT        )

SYSTEM, WILLIAM NORWOOD, Individually,   ) 

EMIL HAEFLINGER, Individually and        )   Honorable

STANLEY RIVES, Individually,             )   George S. Miller,

Defendants-Appellees.          )   Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

In June 1993, plaintiff Brian E. Mattis filed an irre­vocable election for early retirement from his position as a law professor at Southern Illinois University (SIU).  The defendant State Universities Retirement System (System) informed plaintiff of the monthly payment he would receive from his annuity.  Plain­tiff challenged the amount of that payment.  Following a hearing, the System concluded article 15 of the Pension Code (Code) (40 ILCS 5/15-101 
et
 
seq.
 (West 1992)), particularly section 15-136.2 (40 ILCS 5/15-136.2 (West 1992)), mandated the monthly annuity payment it determined for plaintiff.  Plaintiff disagreed, argu­ing the System misinterpreted the statutes.  Plaintiff filed suit in the circuit court of Champaign County seeking administrative review of the System's decision, as well as seeking relief through the court's original jurisdiction.

The circuit court agreed with the System's interpre-tation.  On April 29, 1996, the circuit court dismissed the counts seeking the original jurisdiction of the circuit court.  The circuit court reserved an equal protection argument added to count I, the count seeking administrative review.  On August 6, 1997, the circuit court confirmed the agency's deci­sion.  Plain­tiff appeals, arguing (1) the System and the circuit court misin­ter­preted the Code, resulting in a surplus of funds for the Sys­tem, and (2) the circuit court improperly dismissed the re­maining counts.  We agree with plaintiff's interpretation of the Code and reverse.  

I.  BACKGROUND

Plaintiff opted for early retirement, signing an "irre­vocable" election to have his "retirement annuity processed under the Early Retirement Incentive pursuant to Section 15-136.2" (40 ILCS 5/15-136.2 (West 1992)).  Plaintiff estimated his monthly retirement income would be approximately $3,600 per month.  Plaintiff learned the System determined his retirement income to be approximately $2,800 per month.  He requested his resignation be rescinded, but SIU denied his request. 

In a March 3, 1994, letter, SIU offered plaintiff a payment of $60,558, if he would waive the early retirement option (ERO).  If plaintiff accepted, SIU would have been relieved of expending the early retirement payment of $122,929.  SIU ex­plained to plaintiff under the ERO he would receive an additional estimated $144 per month after taxes.  With a waiver and $60,558, plaintiff could earn $216 per month by purchasing a tax-deferred annuity from Aetna.  

Plaintiff informed the System of SIU's offer and pro­posed the transfer of the funds contributed to the System by SIU to his individual retirement account (IRA).  The System's attor­ney contacted plaintiff via April 19, 1994, letter, to inform him the System could not apply the employer's contribution to his IRA and his claim would be forwarded for administrative review by the claims committee. 

The System, in a letter dated August 24, 1994, informed plaintiff the value of his account as of May 31, 1994, was $329,935.42.  This amount did not include the $122,928.60 SIU paid pursuant to section 15-136.2.  The letter also informed plaintiff his annuity under the general formula (Rule 1) amounted to $2,815.98, and the money purchase amount (Rule 2) was $2,586.37.  See 40 ILCS 5/15-136(a) (West 1992).  Prior to the ERO, plain­tiff had an annu­ity of ap­prox­imately $2,090 under Rule 1, and an annu­ity of ap­proxi­mate­ly $2,600 under Rule 2.

On August 29, 1994, a hearing was held before the System's claims committee.  The claims committee considered whether "the [System should] include the $122,928.60 employer [ERO] payment in the calculation of retirement benefits under Section 5/15-136 Rule 2."  A statement provided by the System to plaintiff estimated his monthly annuity at age 60 would have been $3,640.  The System assisted in "fine-tuning the language" of section 15-136.2 of the Code.  By letter dated December 22, 1994, the claims committee denied plaintiff's appeal.  The executive com­mittee concurred in that decision.  

On February 16, 1995, plaintiff filed a six-count com­plaint in the circuit court of Champaign County against the Sys­tem and three members of the System's executive committee.  Plaintiff sought administrative review of the executive committee's decision and set forth other claims in the circuit court's original jurisdiction.  Both plaintiff and the System filed briefs on the issue of statutory interpretation.  On Janu­ary 17, 1996, the circuit court ruled in the System's favor on the issue of statutory interpretation. 

Plaintiff amended his complaint on February 15, 1996, to add a number of facts and an additional count.  (Plaintiff abandoned counts III and V.)  Count I was amended to add an equal protection argument.  In addition to the statutory interpretation argument, plaintiff contended the irrevocable clause was not applied to everyone equally, as individuals had been permitted to revoke their election.  Count II set forth a claim for the equi­table action of an accounting and included the equal protection argument in count I.  Count IV was almost identical to count II, but sought the remedy of a constructive trust.  In count VI, plaintiff maintained his civil rights were violated.  In count VII, plaintiff alleged a claim of economic duress.  

At a hearing on April 29, 1996, the circuit court con­sid­ered the System's motion to dismiss as a section 2-615 motion (735 ILCS 5/2-615 (West 1996)).  The circuit court denied the System's motion to dismiss the equal protection argument added to count I, but granted the motion dismissing the remaining counts.  The circuit court concluded the equal protection argument need not be considered for counts II and IV.  The circuit court con­clud­ed be­cause the System's interpretation of the Code was cor­rect, the other issues in counts II and VI were dismissed.  The circuit court determined there was no evidence in the record of a due process violation argued in count VI and of economic duress set forth in count VII. 

On August 6, 1997, the circuit court heard arguments on the motion for judgment on the pleadings and denied the motion.  The circuit court found the agency's decision was neither against the manifest weight of the evidence nor contrary to law.  Plain­tiff appealed.

II.  STATUTORY INTERPRETATION

The parties dispute whether the $122,928.60 employer ERO payment should be included in the calculation of plaintiff's retirement benefits under Rule 2 in section 15-136 of the Code.  The System's argument relies on an interpretation of section 15-136.2 in con­junction with section 15-136, whereas plaintiff re­lies on an interpretation of section 15-136.2 in conjunction with both sec­tions 15-185 and 15-136 (40 ILCS 5/15-185, 15-136 (West 1992)).  It is not dis­put­ed the System's inter­pretation of the Code re­sults in more funds than necessary, per­haps as much as $90,000, to fund plaintiff's re­tirement under Rule 1.

Courts usually provide great deference to an agency's interpretation of a statute it is charged with administering.  The agency's interpretation is not binding and is to be rejected if it is erroneous.  
Denton v. Civil Service Comm'n
, 277 Ill. App. 3d 770, 774, 661 N.E.2d 520, 524 (1996).  When a statute is unclear and ambiguous, judicial con­struction of statutory lan­guage becomes necessary.  
Buckellew v. Board of Education of Georgetown-Ridge Farm Community Unit School District No. 4
, 215 Ill. App. 3d 506, 511, 575 N.E.2d 556, 559 (1991).  The main rule in judicial construction is to give effect to the in­tent of the legislature.  
Denton
, 277 Ill. App. 3d at 773, 661 N.E.2d at 524.  In deciding legislative intent, factors a court may consider include the necessity and reason for the law, the evils to be remedied, and goals to be met.  The interpreting court will as­sume the legislature did not intend to produce an unjust or ab­surd result.  
Dunahee v. Chenoa Welding & Fabrica­tion, Inc.
, 273 Ill. App. 3d 201, 205, 652 N.E.2d 438, 442 (1995).  

A presumption exists statutes on the same subject are guided by one policy and the legislature will not create a law in complete contradiction to an earlier statute without expressly repealing the prior statute.  
Jahn v. Troy Fire Protection Dis­trict
, 163 Ill. 2d 275, 279-80, 644 N.E.2d 1159, 1161 (1994).  Courts should construe apparent conflicts between statutes on the same subject in harmony with each other, if reasonably possible.  
Collins v. Board of Trustees of Firemen's Annuity & Benefit Fund
, 155 Ill. 2d 103, 112, 610 N.E.2d 1250, 1253 (1993).  Because a purely legal question is presented for review, our consideration is 
de
 
novo
.  
Denton
, 277 Ill. App. 3d at 773, 661 N.E.2d at 524. 

Three sections of the Code are particularly relevant to this appeal:  sections 15-136, 15-136.2, and 15-185.  Section 15-136 of the Code lists four rules from which the amount of a uni­versity employee retirement annuity is determined.  The amount of the annuity must be determined by the rule that applies and pro­vides the greatest annuity.  Rules 1 and 2, both applicable to plaintiff, lie at the center of this controversy.  Rule 1 deter­mines an annuity based on years of service and a percentage of an individual's earnings during those years.  Rule 1 is a "defined- benefit" plan; the formula used to calculate the amount of an annuity does not relate to contributions made by the employer and employee.  It provides the base amount a retiring employee will receive.  The formula in Rule 2, however, determines an annuity based on employer and employee contributions to the System on the employee's behalf.  40 ILCS 5/15-136(a) (West 1992).  Subsection (b) of section 15-136 outlines a reduction in the retirement annuity set forth under Rules 1 and 3, not Rule 2, should a par­ticipant retire under the age of 60 or with less than 35 years of service.  40 ILCS 5/15-136(b) (West 1992).  

Section 15-136.2 sets forth the requirements for an "[e]arly retirement without discount."  A participant retiring within a listed time period may do the following:

"elect at the time of application to make a one time employee contribution to the System and thereby avoid the early retirement reduc­tion in retirement annuity specified under subsection (b) of Section 15-136.  The exer­cise of the election shall obligate the last employer to also make a one time non-refund­able contribution to the System."  40 ILCS 5/15-136.2 (West 1992).

Section 15-185 states, "The accumulated employee and employer contributions 
shall
 
be
 
held
 
in
 
trust
 
for
 
each
 
participant
 
and
 
annuitant
."  (Emphasis added.)  
40 ILCS 5/15-185 (West 1992).

The System interprets the language of section 15-136.2 to permit application of the employer contribution to only the Rule 1 determination of the retirement annuity.  The System re­lies on the heading of section 15-136.2 and its language "avoid the early retirement reduction *** under subsection (b)," which by its own terms applies to Rule 1.  Thus, plaintiff's annuity under Rule 1 jumped from $2,090 to approximately $2,800, whereas under Rule 2 it stayed at approximately $2,600.

Plaintiff maintains there is no need to reference Rule 2 in section 15-136.2.  Plaintiff maintains Rule 2 is neutral from an actuarial standpoint, because a retirement annuity calcu­lated under Rule 2 is financed through employee and employer contributions and the resulting interest, not through support by the state or the System as in Rule 1.  Plaintiff contends the purpose of section 15-136.2 is to treat retirees as if they re­tired at the age of 60.  

We find two alternative purposes to section 15-136.2.  Plaintiff set forth the first:  the intent to treat early retir­ees as if they were 60.  The second is the intent to place early retirees at the 
minimum
 threshold of retirement funds under Rule 1, as if the retiree was 60 or had 35 years of service.  Given the section's title "without discount" (there is no discount in Rule 2), the language "thereby avoid," and the formula for deter­mining the amount of the one-time employer contribution (based on the age of the individual and years of service), the latter pur­pose seems to be the true purpose of the early retirement stat­ute.  40 ILCS 5/15-136.2 (West 1992).

Even if the legislature intended section 15-136.2 to meet only the minimum threshold for retirement, it is clear the drafting of section 15-136.2 may result in funds in excess of the amounts necessary to satisfy Rule 1.  The issue thus remains of what should be done with excess funds after the one-time contri­bution 
has
 
been
 
made
.  Did the legislature intend all contribu­tions on plaintiff's behalf under the early retirement statute be attributed to the plaintiff's retirement?  On the other hand, did the legislature intend any excess funds be used to fund the Sys­tem?  

Plaintiff relies on section 15-185 for his argument, whereas the System relies on language in section 15-136.2.  Sec­tion 15-185 provides, "[t]he accumulated employee and employer contributions shall be held in trust for each participant."  40 ILCS 5/15-185 (West 1992).  The System argues because section 15-136.2 states pay­ments should go "to the System," the excess should be used for its funding.  

The System cites no additional statutory or case law authority, and the Code does not appear to set forth any means by which funding for the System's operation originates from employee and employer contributions.  We find the System's argument unper­suasive, and we agree with plaintiff's argument:  where else would the ERO payments go but to the System?  It would be anoma­lous to require employers to fund the operation of the System in the manner proposed by the System, especially when employers can avoid payment to the System by offering payments to the retirees instead.  If the surplus was meant to be for the funding of the System, would not the statute prohibit such waivers?  Providing funding for the System in this manner would be unreliable and inconsistent, as well as difficult to monitor, because one would have to evaluate each retiree to determine whether excess funds were contributed and the amount of those funds.  

The System further argues the language of Rule 2 does not permit the application of an ERO contribution, as it is not a "normal" employer contribution as set forth in section 15-155 of the Code (40 ILCS 5/15-155 (West 1992)).  Plaintiff argues Rule 2 per­mits con­sider­ation of the ERO funds.  Plaintiff notes section 15-136.2 of the Code refers to the ERO con­tribution as an "em­ploy­er con­tri­bu­tion," not a "special" contri­bution.  

Rule 2 provides the following:

"The retirement annuity shall be the sum of the following ***:

(i)  The normal annuity which can be provided on an actuarial equivalent basis, by the accumulated normal contributions as of the date the annuity begins; and 

(ii)  an annuity from employer contribu­tions of an amount which 
can
 
be
 
provided
 on an actuarially equivalent basis from the accumulated normal contributions made by the participant***."  (Emphasis added.)  40 ILCS 5/15-136(a) (West 1992).

The "employer contributions" listed in subsection (ii) indicate they are linked to "accumulated normal contributions" of the participant.  40 ILCS 5/15-136(a)(ii), (a)(i) (West 1992).  Thus, one in­ter­pre­ta­tion is that those em­ploy­er contributions are "nor­mal."  The formula in Rule 2, by its own language, however, does not limit consider­ation to "nor­mal" em­ployer contributions.  Subsec­tion (ii) states the employer con­tributions "can be provid­ed" on this scheme, allowing the consid­eration of employer con­tributions through other means.  40 ILCS 5/15-136(a)(ii) (West 1992).  In addi­tion, the for­mu­la for determining the ERO indi­cates legis­la­tive intent that the ERO contri­bution serves as a re­placement of the "nor­mal con­tribu­tions" that would have been made had the retiree not elected early re­tirement.  

The existence of section 15-185, requiring employer contributions be held in trust for each annuitant, coupled with the absence of any statutory authority permitting the System to use the funds for its own purpose, mandates all of the funds con­tributed on plaintiff's behalf pursuant to the ERO be used for plaintiff's benefit.  To do so in this case requires the computa­tion of plaintiff's retirement annuity according to the formula in Rule 2. 

III.  MOTION TO DISMISS

Plaintiff argues the circuit court erred in dismissing the remaining counts.  The System maintains the circuit court prop­erly dismissed with prejudice the remaining counts on the merits, because plaintiff was not entitled to relief under his theories because the retirement annuity was properly calculated.    In reviewing dismissals for failure to state a cause of action under section 2-615, this court takes as true all well-pleaded facts and their reasonable inferences, while rejecting unsupported conclusions of fact or law, to determine 
de
 
novo
 whether sufficient facts are alleged in the pleading that could, if proved, entitle plaintiff to relief.  
Hoye v. Illinois Power Co.
, 269 Ill. App. 3d 597, 599, 646 N.E.2d 651, 652 (1995).  When ruling on a motion to dismiss for the failure to state a cause of action, a trial court may only consider the allegations in the complaint and not other supporting material.  
Bryson v. News America Publications, Inc.
, 174 Ill. 2d 77, 91, 672 N.E.2d 1207, 1216 (1996).  A trial court decision to dismiss a complaint with prejudice for failure to state a cause of action will be upheld if it clearly appears no facts could be set forth that would entitle the plaintiff to relief.  
Hensler v. Busey Bank
, 231 Ill. App. 3d 920, 924, 596 N.E.2d 1269, 1272 (1992).

Because we disagree with the System's and the circuit court's interpretation of the Code, we find the dismissal of arguments set forth in counts II and IV on that basis inappropri­ate.  We also find the dismissal of counts VI and VII improper.  The re­cord clearly demonstrates the circuit court improperly con­sid­ered matters 
beyond
 the complaint when it ruled on the motion to dis­miss.

We note, assuming joinder is proper in this case, con­sideration on administrative review is different than consider­ation of matters of original jurisdiction.  Those matters need to be kept separate.  The parties and the circuit court blurred the lines between the cases.  Separation of the two matters may be appro­priate on remand.

Reversed and remanded.

GARMAN, P.J., concurs.

COOK, J., specially concurs.

JUSTICE COOK, specially concurring:

I believe that Rule 2 provides a safety valve:  however the defined benefits are calculated under Rule 1, the employee will get back at least the annuity value of the contri­butions made on his behalf.  I see no justification for allowing the System to divert this contribution, the ERO payment made by plaintiff's employer on plaintiff's behalf, to purposes other than plaintiff's retirement.  This employer contribution should be considered in determining benefits under Rule 2.