AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL 31, *et al.*, Plaintiffs-Appellees, v. GEORGE RYAN, the Governor of the State of Illinois, *et al.*, Defendants-Appellants.

Fifth District    No. 5—02—0719

Opinion filed April 6, 2004.

734

James E. Ryan, Attorney General, of Chicago (J. William Roberts, Michael J. Leech, Steven M. Puiszis, John E. Sabo, and Stephen R. Swofford, Special Assistant Attorneys General, of counsel), for appellants.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for appellees American Federation of State, County and Municipal Employees, Council 31, and Gina Rives.

William Mudge, State's Attorney, of Edwardsville (John McGuire, Assistant State's Attorney, of counsel), for appellee William Mudge.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

The defendants, Illinois Department of Human Services Secretary Linda Renee Baker and former Governor George Ryan, appealed an order of the Madison County circuit court that enjoined the Department of Human Services (DHS) from closing the Alton Mental Health Center (Alton) and ordered it to follow the procedures contained in the Illinois Health Facilities Planning Act (Planning Act) (20 ILCS 3960/1 *et seq.* (West 2002)), which require a permit from the Health Facilities Planning Board (Planning Board) before any health facility can be modified (20 ILCS 3960/5 (West 2002)). They contend that (1) the plaintiffs lack standing to bring the instant action, (2) some plaintiffs are barred by principles of collateral estoppel from raising the issues involved, (3) the action is barred by sovereign immunity, and (4) the Planning Act does not require a permit to close Alton's civil unit. We agree that the private plaintiffs lack standing, but we find that the State's Attorney may maintain this action, and we affirm the trial court's order.

## I. BACKGROUND

Alton, which is run by DHS, provides residential mental health care services in two distinct and separate units: the forensic unit treats patients who are committed through the criminal justice system, while the civil unit provides care to patients who are civilly committed. In June 2002, due to a reduction in the funding allocated for Alton, DHS announced plans to close the civil unit at Alton. A plan entitled "Preliminary Plan for the Restructuring of the Metro East Network Community Mental Health Service System" called for several patients in Alton's civil unit to be transferred to the Choate Mental Health Facility (Choate) in Anna, Illinois. Choate is 142 miles from Alton. Some of these patients were transferred to Choate during the summer of 2002. The plan called for other patients to be transferred to private hospitals in the Metro East area, which would provide services to them through contracts with DHS. The remaining patients were to be discharged and referred to nonresidential mental health services in the community.

The plaintiffs in the instant suit are the American Federation of State, County and Municipal Employees, Council 31 (AFSCME), a union representing Alton employees; Gina Rives, a pharmacy technician employed at Alton who serves on the executive board of AFSCME Local 124; and William Mudge, the State's Attorney of Madison

County, the county in which Alton is situated. Mudge was substituted as a party for his predecessor as State's Attorney, William Haine, who had sued in his official capacity on behalf of the people of Madison County. On August 14, 2002, the plaintiffs filed a complaint seeking to enjoin the defendants from closing the civil unit at Alton until they had complied with the permit requirement of the Planning Act (20 ILCS 3960/5 (West 2002)). On the same day, the plaintiffs filed a motion for a temporary restraining order. On August 22, the parties entered into a "standstill agreement," pursuant to which the defendants agreed not to close the civil unit until the court held a final hearing on the merits. The agreement further provided that the parties would stipulate to the relevant facts in the case, in order to expedite the final hearing. Because the standstill agreement rendered it moot, the plaintiffs voluntarily withdrew their motion for a temporary restraining order.

On September 18, 2002, the parties entered into a stipulation of facts. The same day, the trial court heard oral arguments in the matter and granted the plaintiffs' request for a permanent injunction. On October 8, the defendants filed a motion to reconsider, which the court denied on October 18. This appeal followed.

## II. ANALYSIS

### A. Right to Bring Enforcement Actions Under the Planning Act

The defendants contend that the plaintiffs lack standing to bring the instant action. In so contending, they argue that the Planning Act does not allow for suits either by private citizens or by State's Attorneys to enforce its permitting provisions. They further argue that AFSCME's and Rives' interests in the litigation are insufficient to confer standing and that both AFSCME and Rives are barred by collateral estoppel because the issues presented herein were decided adversely to them in *American Federation of State, County, & Municipal Employees, Council 31 v. Ryan*, 332 Ill. App. 3d 866, 773 N.E.2d 739 (2002). There, with one judge dissenting, the Fourth District of the Illinois Appellate Court held that private plaintiffs, including AFSCME, did not have a right to bring an action to enforce the permit requirement of the Planning Act. *Ryan*, 332 Ill. App. 3d at 872, 773 N.E.2d at 743. For the reasons that follow, we find that the Planning Act does not preclude an enforcement action by the Madison County State's Attorney. We agree, however, that the Planning Act does not contemplate private enforcement actions by plaintiffs in the position of AFSCME and Rives. Thus, we need not reach the parties' arguments relating to collateral estoppel or AFSCME's and Rives' standing.

In *Ryan* the Fourth District faced facts nearly identical to those before us. There, much the same as here, the plaintiffs included AFSCME and one of its officers who was an employee of the Lincoln Development Center. Additional plaintiffs included the state representative in whose district the center was located and the parents of a long-term resident and patient of the center. *Ryan*, 332 Ill. App. 3d at 869, 773 N.E.2d at 741. Early in 2002, DHS began developing alternate plans to either downsize or close the Lincoln Development Center. *Ryan*, 332 Ill. App. 3d at 869, 773 N.E.2d at 741. The plaintiffs filed an action seeking to enjoin DHS from closing the center without first obtaining a permit. *Ryan*, 332 Ill. App. 3d at 869, 773 N.E.2d at 741. The trial court entered a preliminary injunction ordering the defendants to obtain a permit prior to implementing their plans to downsize the center, and the defendants appealed. *Ryan*, 332 Ill. App. 3d at 870, 773 N.E.2d at 741. While the initial appeal was pending, however, DHS decided that it would close Lincoln Development Center, and Secretary Baker applied for a permit. *Ryan*, 332 Ill. App. 3d at 869, 773 N.E.2d at 741. As a result, the pending appeal was dismissed as moot. *Ryan*, 332 Ill. App. 3d at 870, 773 N.E.2d at 741.

The plaintiffs next filed a motion for a temporary restraining order to enjoin DHS from transferring patients from the center until the Planning Board ruled on its permit application. The trial court granted the motion and the defendants appealed. *Ryan*, 332 Ill. App. 3d at 870, 773 N.E.2d at 741.

■ Although the parties raised other issues, the appellate court considered only whether the plaintiffs before it were authorized to bring the underlying action. Writing for the majority, Justice Steigmann examined sections 15 and 17 of the Planning Act (20 ILCS 3960/15, 17 (West 2000)). Section 15 provides, in relevant part as follows:

"Notwithstanding the existence or pursuit of any other remedy, the [State Planning Board] or the [Illinois Department of Public Health] may, *** upon the advice of the Attorney General[,] who shall represent the [State ·Planning Board] or the [Department of Public Health] in the proceedings, maintain an action in the name of the State *** to restrain or prevent *** construction or modification of a health care facility without the required permit ***." 20 ILCS 3960/15 (West 2002).

Section 17 provides, "It is hereby specifically declared that the powers and functions exercised and performed by the State pursuant to this Act are exclusive to the State of Illinois and that these powers and functions shall not be exercised *** by any home rule unit." 20 ILCS 3960/17 (West 2002). The court concluded that these two sections

confer exclusive authority to enforce the Planning Act's permit requirement on the Planning Board and the Department of Public Health. *Ryan,* 332 Ill. App. 3d at 872, 773 N.E.2d at 743. In so concluding, the court reasoned that to hold otherwise would "render superfluous the requirement in section 15 that the Planning Board or the Illinois Department of Public Health proceed on the advice of the Attorney General, who shall represent them in the proceedings." *Ryan,* 332 Ill. App. 3d at 872, 773 N.E.2d at 743. Justice Appleton wrote a special concurrence in which he concluded that each plaintiff lacked standing, and Justice Myerscough dissented.

■ The defendants contend that *Ryan,* as the only Illinois appellate decision to address the issue we face, is binding precedent that required the trial court (and, by implication, requires this court) to find that no one but the Attorney General is authorized to bring an enforcement action under the Planning Act. The plaintiffs, by contrast, argue that *Ryan* does not constitute a final binding opinion to which principles of *stare decisis* may be applied. They contend that Justice Appleton, in his special concurrence, rejected Justice Steigmann's conclusion that the Planning Act prohibited private actions and that, therefore, there was no majority consensus. We agree with the defendants that Justice Appleton did, in fact, agree with Justice Steigmann's opinion and wrote separately only to emphasize the alternative basis for the court's ruling that he concluded existed. See *Ryan,* 332 Ill. App. 3d at 873, 773 N.E.2d at 744 (Appleton, J., specially concurring). Nevertheless, principles of *stare decisis* do not require us to follow the decisions of other districts of the Illinois Appellate Court. *Loftis v. Vesta Cos.,* 292 Ill. App. 3d 772, 775, 686 N.E.2d 383, 385 (1997). We should not discount a decision lightly when we face issues and facts similar to those that confronted the court rendering the decision. If, however, we find its reasoning unpersuasive, we may decline to follow its holding. *Loftis,* 292 Ill. App. 3d at 775, 686 N.E.2d at 385. This is so even where, as here, the opinion we decline to follow is the only Illinois appellate case to address the issue before us. *Loftis,* 292 Ill. App. 3d at 774, 686 N.E.2d at 385.

We choose not to adopt the reasoning of the Fourth District in *Ryan* because we do not find it persuasive. Unlike the majority opinion there, we think the plain and unambiguous language of the Planning Act is silent on the right of parties other than the Illinois Attorney General to enforce its provisions. As Justice Myerscough observed in her dissent:

"[N]owhere does the [Planning] Act prevent anyone, even a home-rule unit, from maintaining an action for [an] injunction to require compliance with the Planning Act. [Section 17 (20 ILCS

3960/17 (West 2000))] merely limits the use of the Planning Act's regulatory powers to the State, not home-rule units." *Ryan*, 332 Ill. App. 3d at 875, 773 N.E.2d at 745 (Myerscough, J., dissenting). She went on to explain that the "powers and duties" that are exclusive to the State pursuant to section 17 are those regulatory powers listed in the sections delineating the powers and duties of the Planning Board (20 ILCS 3960/12 (West 2002)) and the Department of Public Health (20 ILCS 3960/12.2 (West 2002)). In other words, section 17 merely provides that only the State agencies charged with regulating health care facilities may do so. *Ryan*, 332 Ill. App. 3d at 875, 773 N.E.2d at 745 (Myerscough, J., dissenting). While section 17 prohibits Madison County from issuing a permit to Alton, it does not prohibit the county from bringing an action to compel DHS to comply with the Planning Act.

We also disagree with the *Ryan* majority's conclusion that a holding like ours would render superfluous the language in section 15 providing that the Attorney General shall represent the Planning Board or the Department of Public Health should either of them bring an action to enforce the permit requirement. Rather, we think it means just what it says—that if either of these State agencies brings an enforcement action, the Attorney General will represent the agency.

Moreover, the statute expressly states that its provisions apply "[n]otwithstanding the existence or pursuit of any other remedy." 20 ILCS 3960/15 (West 2002). The *Ryan* majority dismisses this language, stating that it means only that the agencies named in the statute might have other remedies. *Ryan*, 332 Ill. App. 3d at 872, 773 N.E.2d at 743. This court, however, has interpreted similar statutory language to demonstrate a legislative intent to supplement existing remedies rather than to restrict them. *Giles v. General Motors Corp.*, 344 Ill. App. 3d 1191, 1198, 802 N.E.2d 858, 864 (2003). Thus, we do not believe that the Planning Act precludes actions for injunctive relief, a remedy that is ordinarily available to enjoin public officials from performing acts that are illegal or beyond the scope of their official duties. See *Ryan*, 332 Ill. App. 3d at 872, 773 N.E.2d at 743 (acknowledging that such a remedy would be available absent express statutory language to the contrary); see also *Village of Westmont v. Lenihan*, 301 Ill. App. 3d 1050, 1060, 704 N.E.2d 891, 898 (1998), citing *Lindsey v. Board of Education of the City of Chicago*, 127 Ill. App. 3d 413, 422, 468 N.E.2d 1019, 1026 (1984).

Although we find that the Planning Act does not preclude enforcement actions by parties other than the Attorney General, we agree with the *Ryan* court that it does not permit AFSCME and Rives to sue to enforce its permit requirement. The rationale by which we reach

this conclusion, however, is quite different from that of the *Ryan* court. This difference is crucial to our determination that the State's Attorney, unlike the private plaintiffs, does have the authority to bring this suit.

■ Although the Planning Act does not expressly limit enforcement actions to the Attorney General, it does not expressly provide a private right of action either. Where a piece of legislation contains no express language providing for a private right to file an enforcement action, we will find such a right implicit in the legislation only if all the following four requirements are met: (1) the plaintiffs are members of a class of people for whose benefit the statute was enacted, (2) the plaintiffs' injuries are the type of injury the statute was designed to protect, (3) permitting a private right of action is consistent with the underlying purpose of the statute, and (4) allowing a private right of action is necessary to effectuate the purposes of the statute involved. *Moore v. Lumpkin*, 258 Ill. App. 3d 980, 989, 630 N.E.2d 982, 989 (1994).

■ AFSCME and Rives do not satisfy the first two requirements. Where a statute is intended to benefit the public at large, rather than a particular segment of the population, courts do not recognize an implicit legislative intent to create a private right of action. *Moore*, 258 Ill. App. 3d at 991, 630 N.E.2d at 990. The Planning Act applies not only to State-run mental health care facilities but also to all public and private ambulatory surgical centers, hospitals, nursing homes, and kidney disease treatment centers. 20 ILCS 3960/3 (West 2002). Thus, it covers such a wide range of health care services that most Illinoisans will benefit from its protections at some point. Moreover, one express purpose of the Planning Act is to ensure "the availability of quality health care *to the general public.*" (Emphasis added.) 20 ILCS 3960/2 (West 2002). Thus, we must conclude that AFSCME and Rives do not belong to a class for whose particular benefit the Planning Act was enacted.

Further, the injuries they allege are not the type of harm the Planning Act was meant to prevent. They allege that AFSCME members will be laid off from their jobs if the civil unit is closed and that their professional interest in seeing that mental health care is accessible and available will be harmed. The plaintiffs argue that the loss of employment income is a tangible loss and that protecting against it is sufficient to confer standing. See *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 493, 524 N.E.2d 561, 575 (1988) (noting that economic injuries are generally sufficient to confer standing). We need not determine whether either of these interests is direct enough to give Rives or AFSCME standing, however, because an ap-

plication of this principle presupposes the existence of a cause of action. In determining the existence of an implicit private right to file an enforcement action, we must consider not whether the plaintiffs have *any* legally cognizable interest but whether their interest is of the type meant to be protected by the legislation at issue. The Planning Act was intended to contain the rising costs of health care and to ensure the availability of quality health care services to the public. 20 ILCS 3960/2 (West 2002). It was not meant to protect the jobs or professional interests of health care workers, even if these interests might benefit as an incidental result. We thus conclude that neither the first requirement nor the second requirement for finding an implied private right to bring an enforcement action has been met.

Having concluded that AFSCME and Rives do not have the right to bring an enforcement action under the Planning Act, our disposition turns on whether the Planning Act permits State's Attorney Mudge to bring the action. We conclude that it does.

■ The State's Attorney is a constitutional officer whose duties and powers largely parallel those of the Attorney General. *People ex rel. Kunstman v. Nagano*, 389 Ill. 231, 249, 59 N.E.2d 96, 104 (1945). Where the powers of the two offices coincide, they may be exercised either concurrently by both or independently by either. *People v. Dasaky*, 303 Ill. App. 3d 986, 991-92, 709 N.E.2d 635, 640 (1999). One important duty of the State's Attorney is to "commence and prosecute all actions, suits, indictments[,] and prosecutions, *civil and criminal*, in the circuit court for his county, in which the people of the State or county may be concerned." (Emphasis added.) 55 ILCS 5/3—9005(a)(1) (West 2002). Access to quality local mental health care services and the opportunity to participate in the permit process through public hearings (see 20 ILCS 3960/10 (West 2002)) are matters of public interest in which the people of Madison County have an interest. Thus, we find that the instant case falls squarely within the State's Attorney's statutorily prescribed duties, absent an express provision to the contrary.

Further, we find that the Planning Act grants implicit authority to the State's Attorneys to enforce its provisions because that authority is necessary to effectuate the purposes of the Planning Act. This is especially true where, as here, the health care provider seeking to modify a facility is a State agency. The Attorney General is charged with the duty of defending all actions and proceedings against State officers and agencies. 15 ILCS 205/4 (West 2002). Thus, were State's Attorneys not authorized to bring enforcement actions under the Planning Act, the Attorney General would be charged both with defending DHS and prosecuting an action to compel DHS to comply with the

permit requirement. The difficulties inherent in such a dual role are readily apparent. Moreover, the Planning Act expressly provides for the delegation of some of its regulatory authority to local and regional health care planning organizations. 20 ILCS 3960/8 (West 2002) (requiring the Department of Public Health to help communities and regions establish area-wide health care planning organizations and prescribing their duties); 20 ILCS 3960/2 (West 2002) (defining area-wide and local health care planning organizations). The Planning Act also provides that the Planning Board may request assistance from county health departments and municipal health boards in determining whether to grant a permit. 20 ILCS 3960/7 (West 2002). These provisions recognize the need for local involvement if the goal of providing access to quality health care throughout the State is to be met. Given this recognition of the importance of local input to achieving the express goals of the Planning Act, the impracticality of limiting enforcement to the Attorney General where the provider seeking a modification is a State agency, and the lack of any express provision prohibiting enforcement actions by State's Attorneys, we conclude that this action by State's Attorney Mudge is warranted.

### B. The Permit Requirement

■ The defendants contend that they are not required to obtain a permit prior to closing the civil unit at Alton. They base their contention on several definitions found in the Planning Act and the regulations promulgated thereunder. We find that their overly technical interpretation is at odds with the express purposes of the Planning Act.

The defendants argue that the closing of Alton's civil unit is not a "modification" under the Planning Act. The Planning Act defines the "construction or modification" of a health care facility as the "establishment, erection, building, alteration, reconstruction, modernization, improvement, extension, discontinuation, [or] change of ownership" of the facility. 20 ILCS 3960/3 (West 2002). The closing of the entire civil unit at Alton is clearly a "modification" or "alteration" if we give these words their plain and ordinary meanings, as we are required to do when construing a statute (*Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 421, 781 N.E.2d 249, 254 (2002)). However, the regulations define an "alteration" as "any revision or change to a project *** that occurs after [Planning Board] issuance of the permit." 77 Ill. Adm. Code § 1130.140 (2002). The defendants contend that changes to Alton, no matter how substantial, do not fit within these definitions because Alton was constructed long before the Planning Act was enacted and, therefore, did not require a

permit from the Planning Board in the first instance. We find no indication that the legislature did not intend the Planning Act to apply to health care facilities established prior to its enactment. To the contrary, the statutory definition of health care facilities found in section 3 of the Planning Act (20 ILCS 3960/3 (West 2002)) contains no such limitation. Moreover, the Planning Act was enacted in 1974. Relieving all facilities established prior to that date of its requirements would certainly undermine the purposes of the Planning Act by removing a significant portion of the State's health care facilities from the purview of the Planning Act. The legislature could not have intended such a result.

The defendants cite *Marion Hospital Corp. v. Illinois Health Facilities Planning Board*, 201 Ill. 2d 465, 777 N.E.2d 924 (2002), in support of their argument to the contrary. There, the Illinois Supreme Court observed, "[T]he [Planning Board] does not have any oversight of the *operations* of a medical facility once it is built." (Emphasis added.) *Marion Hospital Corp.*, 201 Ill. 2d at 472, 777 N.E.2d at 928. The defendants cite this language out of context. The issue before the supreme court was whether a challenge to the Planning Board's decision to grant a license for the construction of a new orthopedic ambulatory surgery center was moot because it had already been built. *Marion Hospital Corp.*, 201 Ill. 2d at 471, 777 N.E.2d at 927. The supreme court pointed out that once an expenditure for the construction of a new facility is approved by the Planning Board and made by the permit holder, the expenditure cannot be undone, thereby rendering the issue moot. *Marion Hospital Corp.*, 201 Ill. 2d at 472, 777 N.E.2d at 928. The plaintiff's argument to the contrary revolved around a contention that the surgical center's operating license, required pursuant to the Ambulatory Surgical Treatment Center Act (210 ILCS 5/1 *et seq.* (West 1998)), could be revoked if a court held that the license issued by the Planning Board had been improperly granted. *Marion Hospital Corp.*, 201 Ill. 2d at 472-73, 777 N.E.2d at 928. We think it is clear that the quoted language means only that once a permit is granted and acted upon, the Planning Board lacks the authority to do anything that affects the facility's operating license. The fact that the Planning Board does not oversee the operations of a health care facility does not mean that it lacks the authority to determine whether proposed modifications of the facility are warranted after that time. Indeed, accepting the defendants' interpretation would render meaningless the requirement that a permit be obtained before an already-constructed and operational health care facility may undergo a *modification*.

The defendants next contend that closing the civil unit is not the type of modification to which the permit requirement applies. The

Planning Act requires that a health care facility operator apply for a permit if a proposed modification "substantially changes *** the functional operation of the facility." 20 ILCS 3960/5(b) (West 2002). Again, giving this phrase its plain and ordinary meaning, we think it clear that closing the civil unit substantially changes the functional operation of Alton. The regulations, however, provide that a proposed modification substantially changes the functional operation of a health care facility if it is "the addition or discontinuation of a category of service" as defined in the regulations. 77 Ill. Adm. Code § 1130.140 (2002). The regulations further state, " 'Category of Service' means a grouping by generic class of various types or levels of *** care or treatment provided to patient/residents." 77 Ill. Adm. Code § 1100.220 (2002). According to the defendants, closing the unit is not a discontinuation of a category of service because both the civil and forensic units provide the same category of service—chronic mental health care.

The defendants' interpretation ignores the reality that the civil unit provides a critical service not offered by the forensic unit—it provides care to mentally ill people in the community. If Alton closes its civil unit, it will no longer provide this service to the public at all. Thus, we find that the proposed closure does fit within the regulatory definition of a substantial change. The permit application process requires the Planning Board to make a finding, potentially subject to judicial review, that this vital service is available in the community. See 20 ILCS 3960/6 (West 2002) (requiring that the Planning Board make certain factual findings prior to issuing a permit, including a finding "that safeguards are provided which assure that the *** modification of the health care facility *** is consistent with the public interest"); 20 ILCS 3960/11 (West 2002) (providing for a review of the Planning Board's final decisions under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2002))). The mere fact that Alton will continue to provide patients committed to the forensic unit with the same type of treatment the civil unit now provides to the public does not ensure that the mental health care needs of mentally ill Madison County residents will continue to be met. The permit requirement is designed to give the Planning Board the opportunity to determine whether, in fact, these needs can be met without the service proposed to be discontinued. To hold that it does not apply as long as the forensic unit remains open would be contrary to the express purpose of the Planning Act.

## C. Sovereign Immunity

■ The defendants' final contention is that the instant action is barred by sovereign immunity. We find no merit to this contention.

The doctrine of sovereign immunity bars suits against the State except under the Court of Claims Act (705 ILCS 505/1 *et seq.* (West 2002)). *Klopfer v. Court of Claims*, 286 Ill. App. 3d 499, 503-04, 676 N.E.2d 679, 683 (1997). Sovereign immunity does not, however, bar actions seeking to enjoin public officials from taking actions that violate statutes or exceed the public officials' lawful authority. *Healy v. Vaupel*, 133 Ill. 2d 295, 308, 549 N.E.2d 1240, 1247 (1990). The defendants contend that the plaintiffs' suit does not fall into this exception because DHS would not violate the Planning Act or exceed the scope of its authority by closing the civil unit at Alton without first obtaining a permit. This argument fails because that is exactly what the plaintiffs alleged. A *claim* seeking to enjoin actions that are beyond a public official's lawful authority is not barred by sovereign immunity whether or not it ultimately succeeds on the merits.

The defendants further contend that the instant action is barred by sovereign immunity because it seeks to control the decision to close Alton's civil unit, a decision they claim is "committed to the discretion of State officials." A suit to enjoin conduct that violates the law or exceeds the authority of a public official is not barred by sovereign immunity, because it is not considered to be an action against the State. However, a suit that seeks to enjoin public officials from taking actions in a governmental matter over which they have discretionary authority *is* deemed to be an action against the State, and sovereign immunity consequently does then apply. *Management Ass'n of Illinois, Inc. v. Board of Regents of Northern Illinois University*, 248 Ill. App. 3d 599, 612, 618 N.E.2d 694, 702-03 (1993). We do not agree with the defendants' characterization of the conduct the plaintiffs seek to enjoin in the instant case. As we have already discussed, the Planning Act does not allow for unfettered discretion in making the decision to modify a health care facility by closing the only portion of the facility that provides services to the public. It requires that certain procedures be followed. We are not reviewing an ultimate administrative decision to close Alton's civil unit; rather, we are reviewing the trial court's determination that DHS failed to comply with the statutorily mandated procedure for doing so.

The defendants also contend that the decision of the Planning Board not to require the defendants to obtain a permit to close the civil unit is a discretionary decision. We find this assertion to be wholly without merit. Clearly, the Planning Act does not give the Planning Board the discretion to decide whether or not to require a permit. Where the statutory requirement applies, the Planning Board must require a permit. Conversely, where the Planning Act does not require a permit, the Planning Board cannot require one. We conclude that

the relief the plaintiffs seek does not implicate any discretionary decisions. Sovereign immunity does not bar this action.

## III. CONCLUSION

For the reasons stated, we affirm the order of the trial court enjoining the defendants from closing Alton's civil unit until they have complied with the permit requirement of the Planning Act.

Affirmed.

WELCH and KUEHN, JJ., concur.