WILLIE B. HADLEY, JR., Plaintiff-Appellant, v. THE DEPARTMENT OF CORRECTIONS, Defendant-Appellee.

Fourth District   No. 4—05—0090

Opinion filed December 13, 2005.

McCULLOUGH, J., dissenting.

Willie B. Hadley, Jr., of Ina, appellant *pro se.*

Lisa Madigan, Attorney General, of Springfield (Gary S. Feinerman, Solicitor General, and Leslye Jones-Beatty, Assistant Attorney General, of counsel), for appellee.

JUSTICE APPLETON delivered the opinion of the court:

Plaintiff, Willie B. Hadley, Jr., is an inmate at Big Muddy Correctional Center. He filed a class-action complaint to enjoin defendant, the Illinois Department of Corrections (DOC), from charging him and other indigent inmates a $2 co-payment for nonemergency medical and dental services. DOC filed a motion to dismiss the complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2004)). The trial court granted the motion and struck the case. Plaintiff appeals. We reverse the trial court's judgment and remand this case for further proceedings because we find that the complaint states a cause for injunction.

## I. BACKGROUND

In his complaint, plaintiff alleges that during 2002 and 2003, DOC deducted a total of $44 in co-payments from his inmate trust account

even though he had "been deemed indigent by Pinkneyville [Correctional Center], Big Muddy [Correctional Center,] and every *** court [in which] he has filed any pleading *** during his incarceration." He filed a grievance over the practice of charging the $2 co-payment to inmate trust accounts when the individual's account balance was zero. He contended that this practice violated section 3—6—2(f) of the Unified Code of Corrections (Code), which provided: "A committed person who is indigent is exempt from the $2 co-payment and is entitled to receive medical or dental services on the same basis as a committed person who is financially able to afford the co-payment." 730 ILCS 5/3—6—2(f) (West 2002).

On March 4, 2002, William E. Singleton, the DOC official in charge of the inmate trust fund, wrote plaintiff a letter stating:

"Your belief regarding your indigent status has no bearing on medical co-pay procedures. [Administrative] [directive No.] 04.03.103[,] [']Health Care Services for Inmates[,'] states in [s]ection [II(E)(6)(b)]: 'Prior to scheduling the needed services, the inmates shall be required to sign "Request for Payment," [form No.] DC 828, authorizing the deduction of the co-pay[ment] from present or future funds in his or her trust account.'

Please note the words 'present or future,' as they are the key[ ] to my response. We are [required] to deduct this charge from you[r] account *** whether you have funds or not. If you have no funds, we debit your account against future earnings and will deduct from them when earned."

On July 31, 2002, Donald N. Snyder, Jr., the Director of DOC, concurred in the denial of the grievance. Plaintiff alleges he has exhausted his administrative remedies.

Plaintiff further alleges, in his complaint, that "inmates who refuse to sign [a 'Request for Payment,' form No. DC 828,] because they have no funds in their trust fund account are denied medical or dental services. The inmates who are indigent are being thrust further in debt through the disbursement of future funds from their account."

## II. ANALYSIS

### A. Our Subject-Matter Jurisdiction

■ Initially, we must assure ourselves of our subject-matter jurisdiction even though neither party questions it. *People ex rel. Hansen v. Phelan*, 158 Ill. 2d 445, 449-50, 634 N.E.2d 739, 741 (1994). The Illinois Constitution of 1970 abolished sovereign immunity but gave the legislature the power to restore it. Ill. Const. 1970, art. XIII, § 4. In 1971, the legislature did so by enacting the State Lawsuit Immunity Act (Pub. Act 77—1776, § 1, eff. January 1, 1972 (1971 Ill. Laws 3446-

47)), which provides, "the State of Illinois shall not be made a defendant or party in any court" except as provided in the Court of Claims Act (705 ILCS 505/1 through 29 (West 2004)) or the Illinois Public Labor Relations Act (5 ILCS 315/1 through 27 (West 2004)). 745 ILCS 5/1 (West 2004). Thus, sovereign immunity bars lawsuits by a private citizen against the State in state court unless the legislature has waived the immunity. *People ex rel. Manning v. Nickerson*, 184 Ill. 2d 245, 249, 702 N.E.2d 1278, 1280 (1998) ("the legislature—only the legislature —can determine when and where claims against the state will be allowed"). Courts lack jurisdiction over lawsuits barred by sovereign immunity. *Toth v. England*, 348 Ill. App. 3d 378, 387, 809 N.E.2d 702, 709 (2004); *City of Carbondale v. Bower*, 332 Ill. App. 3d 928, 935, 773 N.E.2d 182, 187 (2002).

"Sovereign immunity prohibits a court from entering a mandatory injunction directing the State to take specific action." *Bower*, 332 Ill. App. 3d at 935, 773 N.E.2d at 187. Because the very purpose of sovereign immunity is to bar private litigants from "control[ling]" the State's actions (*Brucato v. Edgar*, 128 Ill. App. 3d 260, 264, 470 N.E.2d 615, 618 (1984)), the same rule would apply to negative injunctions (injunctions prohibiting the State from taking a specific action). But the rule has an exception:

> "A suit to enjoin conduct that violates the law or exceeds the authority of a public official is not barred by sovereign immunity, because it is not considered to be an action against the State. However, a suit that seeks to enjoin public officials from taking actions in a governmental matter over which they have discretionary authority *is* deemed to be an action against the State, and sovereign immunity consequently does then apply." (Emphasis in original.) *American Federation of State, County & Municipal Employees, Council 31 v. Ryan*, 347 Ill. App. 3d 732, 745, 807 N.E.2d 1235, 1245 (2004).

In the present case, plaintiff bases his lawsuit on DOC's purported violation of section 3—6—2(f) of the Code (730 ILCS 5/3—6—2(f) (West 2004)). The statute reads: "A committed person who is indigent is exempt from the $2 co-payment ***." 730 ILCS 5/3—6—2(f) (West 2004). The statute does not leave it up to DOC whether to charge an indigent inmate the co-payment; rather, the statute says the inmate "is exempt" (730 ILCS 5/3—6—2(f) (West 2002)). We conclude that sovereign immunity does not bar this lawsuit. We have subject-matter jurisdiction.

### B. Cause for an Injunction

#### 1. *A Clear Right That Needs Protection*

In his complaint, which he brings on behalf of himself and "all

other similarly situated *** inmates [in the custody of DOC,]" plaintiff requests a permanent injunction "ordering [DOC] to cease and desist from arbitrarily applying a policy of *** forcing indigent inmates *** to sign a [']Request for Payment[,'] [form No. DC 828], authorizing the deduction of the $2 co-payment from present or future funds [in their] account."

■ An injunction, whether temporary or permanent, is an extraordinary remedy. *Sadat v. American Motors Corp.*, 104 Ill. 2d 105, 115, 470 N.E.2d 997, 1002 (1984); *Brown v. Murphy*, 278 Ill. App. 3d 981, 994-95, 664 N.E.2d 186, 196 (1996). Therefore, when reviewing the dismissal of a complaint for an injunction on the ground of legal insufficiency, we take the well-pleaded facts as true, but we do not resolve all inferences in the plaintiff's favor as we would do in other cases (*e.g., Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 267, 798 N.E.2d 75, 79 (2003)). The pleading requirements are more rigorous:

"It is *** a common rule[,] well established in equity, that essential facts relied upon for relief by injunction must be stated with sufficient certainty to negative every reasonable inference arising upon the facts stated from which inference it might be said that the complainant is not entitled to the relief sought. Upon demurrer [(*i.e.*, a motion to dismiss for failure to state a cause of action),] every allegation of the [complaint] is taken most strongly against the pleader." *Gates v. Sweitzer*, 347 Ill. 353, 363, 179 N.E. 837, 841 (1932).

Thus the supreme court has held:

" '[A] well-pleaded complaint praying for injunctive relief must contain on its face a clear right to relief and state facts which establish the right to such relief in a positive[,] certain[,] and precise manner.' [Citation.] These factual allegations must specifically establish the inadequacy of legal remedy and the irreparable injury the plaintiff will suffer without the injunction." *Sadat*, 104 Ill. 2d at 116, 470 N.E.2d at 1002, quoting *Parkway Bank & Trust Co. v. City of Darien*, 43 Ill. App. 3d 400, 406, 357 N.E.2d 211, 217 (1976).

Reviewing the complaint *de novo*, without any deference to the trial court (*Mattis v. State Universities Retirement System*, 296 Ill. App. 3d 675, 682-83, 695 N.E.2d 566, 571 (1998)), we ask whether plaintiff has pleaded facts establishing that he has a certain and clearly ascertainable right needing protection (see *Local 1894 v. Holsapple*, 201 Ill. App. 3d 1040, 1045, 559 N.E.2d 577, 580 (1990); *County of Kendall v. Rosenwinkel*, 353 Ill. App. 3d 529, 538, 818 N.E.2d 425, 433 (2004)).

Plaintiff derives his claimed right from section 3—6—2(f) of the Code, which reads in relevant part as follows:

"[DOC] shall require the committed person receiving medical or dental services on a non[ ]emergency basis to pay a $2 co-payment to [DOC] for each visit for medical or dental services. The amount of each co-payment shall be deducted from the committed person's individual account. A committed person who has a chronic illness, as defined by [DOC's] rules and regulations, shall be exempt from the $2 co-payment for treatment of the chronic illness. A committed person shall not be subject to a $2 co-payment for follow-up visits ordered by a physician, who is employed by, or contracts with, [DOC]. A committed person who is indigent is exempt from the $2 co-payment and is entitled to receive medical or dental services on the same basis as a committed person who is financially able to afford the co-payment." 730 ILCS 5/3—6—2(f) (West 2004).

In 2002 and 2003, when debiting plaintiff's inmate trust account for the co-payments, DOC had a rule providing as follows:

"(g) Committed persons who require non[ ]emergency medical or dental services at offices or facilities other than [DOC] facilities shall authorize [DOC] to deduct a [$2] co-pay[ment] from present or future funds in his or her trust fund account prior to each visit. Non[ ]emergency services are scheduled services determined necessary by a [DOC] physician.

(1) The co-payment shall be paid from the committed person's trust fund when the services are delivered.

(2) Committed persons who are without funds at the time services are delivered shall not be denied medical or dental services. The committed person's trust fund account shall be restricted for the amount of co-payment and shall be paid upon receipt of future funds.

(3) A committed person who is found to be indigent shall be exempt from the co-payment. A committed person shall be considered indigent if[,] during the entire term of his or her incarceration[,] the committed person is without funds to pay the [$2] co-payment." 20 Ill. Adm. Code §§ 415.30(g)(1) through (g)(3) (Conway Greene CD-ROM June 2002).

As the State acknowledges, administrative directive No. 04.03.103, which Singleton cites in his letter to plaintiff, is a restatement or an implementation of the above-quoted DOC rule. Plaintiff argues the administrative directive is irreconcilable with the plain language of section 3—6—2(f) of the Code, which "exempt[s]" indigent inmates from the co-payment (730 ILCS 5/3—6—2(f) (West 2004)). If the administrative directive reaches beyond DOC's statutory authority, so do the corresponding provisions of the rule it implements.

DOC has no general or common-law powers (see *City of Chicago v. Fair Employment Practices Comm'n*, 65 Ill. 2d 108, 113, 357 N.E.2d

1154, 1155 (1976)); it is a creation of the Code and must find its powers in the Code (see *Bio-Medical Laboratories, Inc. v. Trainor*, 68 Ill. 2d 540, 551, 370 N.E.2d 223, 228 (1977)). Thus, DOC can charge indigent inmates a co-payment only if the Code expressly or by fair implication empowers DOC to do so. *Aurora East Public School District No. 131 v. Cronin*, 92 Ill. App. 3d 1010, 1014, 415 N.E.2d 1372, 1375-76 (1981). Does the Code empower DOC to charge indigent inmates a co-payment? Of course not. The Code unambiguously forbids DOC from doing so.

In some circumstances, the concept of indigence could create ambiguity. Everyone knows what "indigence" means in a general sense. But more precisely, in terms of dollars or net worth, how destitute must an inmate be to qualify as "indigent" within the meaning of section 3—6—2(f)? The legislature does not say. Apparently, it intended DOC to decide—and we will defer to DOC's interpretation insomuch as it is reasonable. See *Church v. State*, 164 Ill. 2d 153, 162, 646 N.E.2d 572, 577 (1995); *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n*, 95 Ill. 2d 142, 152, 447 N.E.2d 295, 300 (1983). In section 415.30(g)(3) of Title 20 of the Illinois Administrative Code, DOC interprets "indigent." If the rule is a defensible interpretation, we will uphold it; if the rule conflicts with the statutory language, the rule is invalid, and we will strike it down. See *Illinois RSA No. 3, Inc. v. Department of Central Management Services*, 348 Ill. App. 3d 72, 76, 809 N.E.2d 137, 140 (2004); *Aurora East Public School District*, 92 Ill. App. 3d at 1014, 415 N.E.2d at 1376.

The statute requires DOC to "deduct[ ]" "[t]he amount of each co-payment *** from the committed person's individual account." 730 ILCS 5/3—6—2(f) (West 2004). The statute further provides, however, that "[a] committed person who is indigent is exempt from the $2 co-payment and is entitled to receive medical or dental services on the same basis as a committed person who is financially able to afford the co-payment." 730 ILCS 5/3—6—2(f) (West 2004).

In DOC's regulatory scheme, even though an inmate lacks funds and has a negative net worth, DOC can charge that inmate a co-payment by virtue of its special definition of "indigent": "A committed person shall be considered indigent if[,] during the entire term of his or her incarceration[,] the committed person is without funds to pay the [$2] co-payment." 20 Ill. Adm. Code § 415.30(g)(3) (Conway Greene CD-ROM June 2002). Because present impoverishment does not equal "indigence," "[t]he committed person's trust fund account shall be restricted for the amount of co-payment and shall be paid upon receipt of *future* funds." (Emphasis added.) 20 Ill. Adm. Code § 415.30(g)(2) (Conway Greene CD-ROM June 2002). Can we square this rule with the legislature's intent?

The best evidence of legislative intent is the language of the statute, understood in its plain and ordinary sense. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 26, 828 N.E.2d 1155, 1169 (2005). Any considerations of public policy are superfluous when the statutory language is clear. *Vicencio v. Lincoln-Way Builders, Inc.*, 204 Ill. 2d 295, 311, 789 N.E.2d 290, 299 (2003); *Chapman v. Richey*, 78 Ill. 2d 243, 248-49, 399 N.E.2d 1277, 1279 (1980). To "exempt" someone means to "release or deliver [that person] from some liability or requirement to which others are subject." Merriam-Webster's Collegiate Dictionary 405 (10th ed. 2000). Just as a matter of pure logic, it is impossible to both charge the co-payment to an inmate's account and exempt the inmate from the co-payment. One must choose one course of action or the other. The only reasonable interpretation of section 3—6—2(f) is that DOC shall deduct the co-payment from the inmate's account *unless* the inmate is indigent, in which case DOC shall exempt the inmate from the co-payment. The statute speaks of a present, not a future, state of affairs: "*is* indigent" and "*is* exempt"; it speaks of the inmate's financial condition at a particular point in time, when the inmate is to "receive medical or dental services." (Emphases added.) 730 ILCS 5/3—6—2(f) (West 2004). The statute does not say: "A committed person who *remains indigent throughout the term of his or her imprisonment shall be exempt* from the $2 co-payment." The statute does not say that inmates shall pay the co-payment (to quote the State's brief) "*if and when* they later have the means to do so." (Emphasis in original.)

DOC's definition of "indigent" does violence to that word's common meaning and conflicts with the statute. The mere theoretical possibility of obtaining money at some indefinite time in the future does not change the fact that a penniless person is indigent. Whatever "indigent" means in terms of specific dollar amounts, it must include an inmate who has absolutely zero assets, despite the possibility—a possibility common to everyone, including indigent people—that the inmate's financial situation might someday improve.

■ Section 3—6—2(f) of the Code gave plaintiff a clear right to an exemption from the $2 co-payment if, at the time he sought nonemergency medical or dental services, he lacked the means to pay it. He alleges that even though he had no funds or assets, DOC, pursuant to an invalid policy, charged the co-payments to his inmate trust account and thereby put the balance in negative territory. We find that plaintiff has alleged the first of the three conditions for granting an injunction: a certain and clearly ascertainable right that needs protection. See *Local 1894*, 201 Ill. App. 3d at 1045, 559 N.E.2d at 580.

## 2. *Irreparable Injury Without the Injunction*

The second condition for the award of an injunction is that the plaintiff will suffer irreparable injury without the injunction. *Local 1894*, 201 Ill. App. 3d at 1045, 559 N.E.2d at 580. As we and other districts of the appellate court have held, "[i]rreparable harm does not mean injury that is beyond repair or beyond compensation in damages but[,] rather[,] denotes transgressions of a continuing nature." *Tamalunis v. City of Georgetown*, 185 Ill. App. 3d 173, 190, 542 N.E.2d 402, 413 (1989); *Lucas v. Peters*, 318 Ill. App. 3d 1, 16, 741 N.E.2d 313, 325 (2000); *Wilson v. Illinois Benedictine College*, 112 Ill. App. 3d 932, 939, 445 N.E.2d 901, 908 (1983); *General Electric Co. v. Local 997*, 8 Ill. App. 2d 154, 165, 130 N.E.2d 758, 763-64 (1955). The injury need not be very great. *Mutual of Omaha Life Insurance Co. v. Executive Plaza, Inc.*, 99 Ill. App. 3d 190, 195, 425 N.E.2d 503, 508 (1981). Indeed, injunctive relief is well suited to small injuries that are " 'of such constant and frequent recurrence that no fair or reasonable redress can be had therefor in a court of law.' " *General Electric Co.*, 8 Ill. App. 2d at 165, 130 N.E.2d at 763, quoting 2 H. Wood, A Practical Treatise on the Law of Nuisances § 778, at 1893 (3d ed. 1893).

The amount of plaintiff's pecuniary injury ($44) is not great, but it is an injury that will probably be repeated. Administrative rules have the force of law (*People v. Selby*, 298 Ill. App. 3d 605, 611, 698 N.E.2d 1102, 1107 (1998)), and therefore DOC will no doubt feel obliged to follow its rule until a court orders otherwise. As a result, without an injunction, plaintiff and other indigent inmates will suffer the same small two-dollar injury over and over again, their inmate trust accounts going deeper and deeper into the red. We find that plaintiff has pleaded the second condition for an injunction.

## 3. *Lack of an Adequate Remedy at Law*

The third condition for the granting of an injunction is that the plaintiff lacks an adequate remedy at law. *Local 1894*, 201 Ill. App. 3d at 1045, 559 N.E.2d at 580. The State argues that plaintiff does have an adequate remedy at law because if DOC wrongfully debited his account, he could file a claim for reimbursement in the Court of Claims, which has exclusive jurisdiction over "[a]ll claims against the State founded upon any law of the State of Illinois" (705 ILCS 505/8(a) (West 2004)). We foresee, however, that the Court of Claims would tell plaintiff the same thing it told the claimant in *Tedder v. State*, 40 Ill. Ct. Cl. 201, 202-03 (1988), when he requested a declaration that "procedures of [DOC] [were] in violation of certain statutes": "The Court of Claims simply does not have jurisdiction to consider such a claim. This [c]ourt cannot consider the *** validity of *** regulations

\*\*\*." We find that plaintiff has pleaded the lack of an adequate legal remedy, the third condition for the granting of an injunction.

## III. CONCLUSION

Therefore, we reverse the trial court's judgment and remand this case for further proceedings.

Reversed and remanded.

MYERSCOUGH, J., concurs.

JUSTICE McCULLOUGH, dissenting:

I respectfully disagree and would affirm the trial court.

The letter referred to in the majority's decision simply requires the payment from future income, the $2 co-payment. Section 3—6—2(f) of the Code states that "[a] committed person who is indigent is exempt from the $2 co-payment and is entitled to receive medical or dental services on the same basis as a committed person who is financially able to afford the co-payment." 730 ILCS 5/3—6—2(f) (West 2004). The statute in section 3—6—2(f) does not define the word "indigent." The Administrative Code does define the term "indigent." The DOC rule defines the word "indigent," stating that "[a] committed person shall be considered indigent if[,] during the entire term of his or her incarceration[,] the committed person is without funds to pay the [$2] co-payment." 20 Ill. Adm. Code § 415.30(g)(3), as adopted at 21 Ill. Reg. 5911, 5914, eff. May 1, 1997.

The majority states that it is impossible to both charge the co-payment to an inmate's account and exempt the inmate from the co-payment. However, this is exactly what the rules of DOC provide. If the indigent has no income during the entire time of his imprisonment, he is not harmed. There is no irreparable harm because he gets the medical services. I suggest that it is not impossible to both charge and exempt a person in the plaintiff's status. That is exactly what the regulation does. The majority states that without an injunction, the plaintiff and other indigent inmates will suffer the same $2 injury over and over again. This is simply not true. The inmate who has no funds and receives no funds during his term of imprisonment will receive the same services and not be required to pay a dime for the same.