[Civ. No. 9177.   Third Dist.   Oct. 31, 1957.]

HUGH CORWIN et al., Respondents, v. PAUL J. HAMILTON et al., Appellants.

Burton, Lee & Hennessy for Appellants.

Frank W. Shuman for Respondents.

VAN DYKE, P. J.—On February 26, 1954, appellants, as lessees, and respondents, as lessors, entered into a written lease for a term of five years, whereby the respondents leased to appellants the "southerly front three rooms facing Florence Avenue of the Corwin Building, situate in Dunsmuir, California." Early in January, 1955, the appellants removed their possessions from the leased premises, and, paying no further rent, were sued by the respondents in this action for rental accrued. Respondents obtained judgment and therefrom this appeal is taken.

The complaint alleged the making of the lease and the nonpayment of rent from February 1, 1955, to September 30, 1955, that being the period ensuing between the first failure to pay rent and the filing of the action. The answer admitted the making of the lease, denied generally the accrual and nonpayment of rent and affirmatively pleaded eviction resulting from respondents' having barricaded the entrance to the leased premises, thereby preventing use thereof by appellants. They further alleged that prior to January, 1955, they had removed their possessions and belongings from the leased premises, had advised respondents of their intention to surrender their lease and that respondents had accepted surrender and terminated the lease. The trial court found against appellants in respect of all the defenses urged.

It was in the trial court, and it is here, the contention of appellants that although the lease made no mention of any right to use other than the three rooms specifically described therein yet they were entitled to use for auto parking purposes a vacant lot owned by respondents which was contiguous to the lot upon which the office building was situated; that

they were also entitled to use the back door of the office building as an entrance to the building. They contended further that after they had moved from the leased premises the respondents had barricaded the back door of the office building so that it could no longer be used in connection with the rooms they had rented and that respondents had prevented the use of the adjoining lot for parking purposes by tenants of the building, including appellants; that by these acts respondents had constructively evicted appellants and they had impliedly accepted the tendered surrender of appellants' leasehold.

The evidence presented falls far short of establishing these propositions as a matter of law and the court's findings to the contrary find ample support in the record. Appellant Paul J. Hamilton, who is a dentist and who practiced his profession in the three rooms leased by appellants, testified that he vacated the rooms under the following circumstances and for the following reasons: When he rented the rooms two doctors were also renting offices on the same floor of the building with one of whom he shared a reception room. He was just beginning his dental practice in Dunsmuir and a substantial part of the professional employment he had obtained came through referrals from the doctors. When he learned that these doctors, one of whom had erected a so-called medical building at another location in town, were both moving into the new building he became, as he put it, "panicky" as to the effect upon his practice and determined to move into the same building into which the doctors were going. Up to that time it appears he had no complaint concerning any failure of respondents to abide by their obligations under the lease, and had vacated his rooms solely because of what he considered to be his financial betterment. He testified that he was well aware he was then bound by the lease. It appears that shortly following appellants' removal of their possessions from the rented rooms Hugh Corwin, one of the respondents, came to Dunsmuir to look over respondents' building.    He found that the entire floor upon which appellants' rooms were located had been vacated and the doors were standing open; that the water had not been turned off; that in view of the severity of the weather he took measures, as he testified, to protect his property from weather damage and from vandalism. He turned off the water in the upper floor rooms to keep the pipes from freezing. He nailed a light bar across the rear door entrance to the upper floor. He padlocked the

front door leading to that upper floor and gave a key to the appellants. Respecting the adjacent lot, he found that members of the public had been using it for parking and in doing so had damaged the down spout at the rear of his building. Accordingly, he said, he placed a chain barricade across the entrance to that vacant lot in order to keep, as he put it, unauthorized persons from going to the rear of the building. He closed windows that had been left open. He notified appellants in writing that he was holding the leased premises for their benefit and that the steps he had taken were solely for protective purposes. On February 1, 1955, respondents' attorney wrote to appellants, advising them that respondents were not consenting to a termination of the lease and were holding the premises available for use by appellants. Again, on March 22, 1955, respondents wrote appellants, advising them that while they were taking precautions to protect their property their actions connected with the premises were for such purpose only and that the premises were still being held for their use. It is without dispute that the adjacent lot which had for long been used by tenants of the building for parking purposes was in fact wholly unimproved, rocky, steep and rough.

It is apparent from the foregoing that the court was fully warranted in holding that the lease was in full force and effect between the parties hereto; that there had been no acceptance of tendered surrender and that there had been no constructive eviction. Indeed, it may well be doubted whether, under the evidence in this record, any other finding by the trial court would have found support in the evidence. We quote the following from the memorandum opinion filed by the trial judge which appears in the record here:

"The question for the Court to resolve in this case is, did the lease which made no mention of any appurtenances but only mentioned three rooms facing Florence Avenue on the 2d floor of the Corwin Building, located at 724 and 726 Florence Avenue, Dunsmuir, California, include the right to use the vacant lot for parking purposes and also the right to free and unobstructed access through both the front and back doors of the building to these rooms? . . .

"Ordinarily, when a person leases offices in a building, it includes the right to use all hallways, elevators, stairs and doors that provide an access to the office that he leased, and this goes along with the lease as incidentals thereto, without being particularly mentioned.

■ "We will consider the right to use the vacant lot along the side of the building as a parking lot. I do not believe that it could successfully be maintained that the plaintiffs could not have built a building on this lot if they had wished, and by no stretch of the imagination could this parking lot be included in a lease which did not mention any appurtenance, so if they had a right to build a building on it they would have a right to close it. The status of this lot, as the Court considers it, was merely a convenience; as long as the plaintiffs were not making any use of the lot for other purposes, they had no objections to tenants parking their cars there, but I do not believe it could be successfully maintained that they had any absolute right to prevent him from using the lot for other purposes if he saw fit to do so. So the Court will hold that the defendants had no legal complaint because the plaintiffs had placed a barrier across this lot.

"We will now consider the back door. It was not necessary for the tenants of the building to use the back door to enter their offices. They could enter by the front door. Therefore, the Court will consider that the back door was a mere convenience also, and that the plaintiffs would have a right to close it if they saw fit. The court is not exactly clear as to whether the back door opens on to the vacant lot or on to the rear of the building, but in either event, as it was not mentioned in the lease, and as the tenants had access through the front door, I do not believe that they could prevent the owner of the building from closing the back door if he saw fit. It was also a mere convenience to the tenants, so the Court must hold that the putting of the barrier across the lot and the barricading of the back door was not an eviction of these tenants.

■ ". . . The owner of property which is leased, has a right to come on the property if he finds that the tenants have moved, and take steps to protect his property, and if the steps that Corwin took were with the intent to protect his property and not with the intent of taking possession, then there was no acceptance of the surrender. The letters he wrote in connection with this show that he did not intend to accept the surrender and this being the case, the lease was not terminated, and as the Court heretofore said, the acts of the plaintiff did not amount to an eviction and the acts of the plaintiff also did not amount to an acceptance of the surrender, and the Court cannot but hold that this lease is still

in full force and effect and although the rule is rather harsh, the defendants having signed the written lease and agreeing to pay rent for five years, cannot be relieved from this obligation.''

■ Both as to the law therein announced and as to the effect of the facts therein recited this court is in accord with what we have quoted from the trial court's memorandum.

■ Appellants next contend that the trial court erred in refusing to allow them to introduce evidence concerning their reasons for moving out of the leased premises. As hereinbefore recited, appellant Paul J. Hamilton did testify concerning his reasons for moving. It appears, therefore, that what the appellants now complain of is that they were not permitted to prove why the doctors had moved from the building, it being indicated in the briefs that the doctors' reasons for moving would have been predicated upon some improper conduct of the respondents as lessors of the premises occupied by the doctors. No citation of authority is required to uphold the ruling of the trial court, since it is apparent that the doctors' reasons for moving—even though based upon some violation of the terms of their month to month leases—would not support any defense advanced by appellants in this action. However, even if it were possible that such proof would be admissible, we could not on this record predicate error in the court's ruling for the reason that the record does not disclose what the witnesses would have testified to. The trial court, therefore, was not informed how or in what manner the testimony sought to be elicited would be relevant or material and this court is equally in the dark. All that appears is that counsel addressed the court, saying that there was a line of questioning he wanted to go into in order to find out the reasons why other tenants left the building because if respondents had performed certain acts which drove other tenants out they would effect a constructive eviction also of the appellants. No offer of proof was made. ■ ''[T]he exclusion of testimony will not be reviewed when there is nothing in the record to show its purpose, materiality, or relevancy, . . . Error in sustaining an objection to a question asked a witness will not be reviewed where there is nothing to show that the witness' answers would have been relevant and competent.'' (3 Cal.Jur.2d, Appeal and Error, p. 805.)

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.