MUTUAL OF OMAHA LIFE INSURANCE CO. *et al.*, Plaintiffs-Appellants, *v.* EXECUTIVE PLAZA, INC., *et al.*, Defendants-Appellees.

Second District    No. 80-919

Opinion filed August 17, 1981.—Rehearing denied September 16, 1981.

Thomas D. Luchetti, of Rockford, for appellants.

Norman E. Lindstedt and Bradley T. Koch, both of Holmstrom & Green, of Rockford, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Mutual of Omaha Life Insurance Co. and United Benefit Life Insurance Co. (Tenants), sued the defendants, Executive Plaza, Inc., the managing company for a commercial office building in Rockford, and the owner, Amalgamated Bank & Trust Co., as trustee of Trust No. 2436 (Lessor) for breach of a lease agreement. They sought to enjoin the continued operation of a restricted parking area in the lot adjacent to the leased premises and other relief. The trial judge ruled that the lease had been breached, finding that the Tenants enjoyed a right to use the parking area provided by the Lessor in common with other lessees, but concluding that the removal of the restricted area would not solve the problem of inconvenience, the harm claimed; that no direct economic or

monetary loss to the tenants had been proved; and that injunctive relief was not appropriate under these circumstances. The Tenants appeal.

Plaintiffs leased a portion of the office building from the Landlord on April 1, 1975, and, by amendment, extended their lease term until March 31, 1985. The lease form was prepared and supplied by defendants' agent. Plaintiffs have not breached any of the terms of the lease.

The pertinent provision in the lease states:

"XX. HEAT, LIGHT, WATER, JANITOR SERVICE, ETC.

That Lessor shall, subject to any governmental use limitation, furnish heat, air conditioning, water (hot and cold), elevator and janitor service for said leased premises at such times and in such manner as will keep said leased premises in a clean, healthy and proper condition and so as to render the same tenantable at all times during the term hereof. Electricity for office use and replacement light bulbs or tubes shall be at the expense of Lessee. Lessee and its employees and others having business with Lessee shall have the right in common with others occupying space in subject premises to use the parking area provided by Lessor. Lessor shall maintain said parking area in a neat and clean manner including snow removal."

At the time of the execution of the lease a parking lot was provided adjacent to the office building consisting of approximately 148 spaces for the use of the tenants of the building and their respective clients; with five points of ingress and egress, two on North Court Street (a two-way street), and one each on Park Street, Locust Street (both two-way streets), and North Church Street (a one-way street). Off-street parking is available to the general public on three of the aforementioned streets.

In May 1980, the Lessor entered into a lease with a new tenant, Coopers and Lybrand (hereinafter C & L). According to its lease, C & L leased approximately 27 percent of the total rentable area of the building; and, in addition, C & L employees were given exclusive access to and use of 32 parking spaces in the previously existent common parking lot plus an additional 18 spaces in a newly constructed parking lot on Locust Street across from the premises. Access to the 32 parking spaces in the common lot and to the Locust Street lot is controlled by plastic cards which are inserted into a gate mechanism to raise and lower the gate. The restricted area is cordoned off with the use of chains. The controlled access gate to the main lot is one of the two situated on North Court Street.

At trial, a managing partner of C & L testified that 32 to 38 employees are in the office on a normal workday and that each employee drives his or her car to work daily. C & L has three to seven clients and three to

seven vendors visiting its office on a normal workday. The exclusive parking arrangement had been a requirement of C & L during the negotiations for the lease.

Plaintiffs have 8 employees who work in its offices on a normal workday, each of whom also drives his own car, and approximately 2 to 12 clients who visit the offices on a normal workday. A witness for the plaintiffs testified that he habitually parked in the exclusive area prior to the erection of the gates and that he has been inconvenienced by not finding parking in the lot.

Plaintiffs also called a representative from each of the other 16 tenants of the office building as witnesses during the trial proceedings. The witnesses testified, in essence, that on a normal workday more employees drive a car to work than there are places in the parking lot. Although some witnesses had experienced virtually no problems finding parking since the creation of the exclusive area, most of the witnesses testified to greater difficulty in finding a parking space, with some having to park further away from the building than they did previously and some being unable to find a spot in the lot on a few occasions. The testimony of the witnesses established that none of the tenants in the office building are engaged in retail operations, and most have fewer than 10 clients visit their office on a normal working day.

According to a survey done by a secretary of the plaintiffs, there were only seven times during the period between April 28, 1980, and October 6, 1980, when there were no spaces available in the common lot. A survey for defendant, done by the owner of an independent janitorial service employed by defendant, was conducted from May 28, 1980, until October 7, 1980. He never encountered a situation in which there were no parking spaces available.

The only testimony of plaintiffs' personal damages was that of Lee Weckerly, who testified that he and most of his agents habitually parked in the exclusive area prior to the erection of the gates, that the erection of the gates caused the plaintiff the loss of 20 percent of the ingress and egress from the common parking lot, that approximately 22 percent of the parking lot was no longer available, that he had been inconvenienced and that he had seen his agents and customers inconvenienced by the loss of parking space. He testified that he knew of no way to calculate the monetary damage incurred by the plaintiffs by reason of the defendants' erection of the exclusive parking area.

The tenants contend that since the trial court found that the lease created an easement to use the entire parking lot and thus that the restriction of that use breached both the lease and the grant of the easement appurtenant to the leased premises, it was error to refuse to issue an injunction to remedy the breach even assuming that actual damages were

not proved. They, however, claim that they have proved such damages. In addition, they contend that the trial court erred by finding they had not proved the existence of the nuisance. Alternatively, they argue that they are entitled to a new trial because of errors in certain evidentiary rulings.

The plaintiffs seek to rely on a line of cases which hold that minimum interference with an easement appurtenant to a parking lot is sufficient for the court to issue an injunction, even absent any proof of harm. In *The Fair v. Evergreen Park Shopping Plaza* (1955), 4 Ill. App. 2d 454, the plaintiff-lessee brought an action to remove a bay window from a building in a shopping mall which had been added to another store. The bay window extended onto the mall but not into the parking area. The plaintiff's lease required the landlord to construct and maintain the mall and parking lot as described in an attached plot plan, and the lot was demised specifically for the use of the tenants, employees, customers and invitees in common with other tenants. The cost of maintenance of the mall and lot was divided in proportion to the total amount of rentable space leased to the tenant. The court noted that the leases in question were specifically referenced to the site plans and did not reserve a right to change the areas in question, although the leases did reserve other areas for future expansion. The court found that the lease granted the easement appurtenant to the tenant over the mall area and parking area with access rights to the store. Therefore, the plaintiff had a right to insist that the construction of the mall comply with the site plan. The court also noted that the bay window gave the other store a retail merchandising advantage over the plaintiff and therefore found that the damages resulting therefrom were impossible to compensate adequately in money damages and so granted the injunction.

In *Walgreen Co. v. American National Bank & Trust Co.* (1972), 4 Ill. App. 3d 549, Walgreen sought to enjoin the erection of a Fotomat kiosk in the parking lot of the shopping center in which a Walgreen's was located. Its lease expressly gave plaintiff the right to use the lot as referred to in the plot plan, containing at least 150,000 square feet and 400 parking spaces; it further obligated the plaintiff to pay a proportionate share of the upkeep. The lease reserved the right of the lessor to expand in some areas but not in the area at issue. The proposed kiosk would take up approximately 3 parking spaces, but would leave a lot area still in excess of 150,000 square feet and 400 parking spaces. The court found that the plot plan controlled the right to parking areas; that the kiosk was not in an area reserved for future expansion; that plaintiff's lease was breached and his easement appurtenant was violated; that the elimination of three spaces was not negligible since it interfered with the property right of the plaintiff, eliminated parking spaces and disrupted established patterns of customer flow. The court therefore granted the injunction.

*Great Atlantic & Pacific Tea Co. v. La Salle National Bank* (1979), 77
Ill. App. 3d 478, is factually similar to the above cases except that it
involved the construction of a drive-in-bank. The trial court granted a
dismissal of the complaint for injunction and the appellate court reversed.
The appellate court noted that arguably the lease granted an easement
appurtenant and therefore the complaint should not be dismissed. The
appellate court cited the above cases and analyzed them as follows:

"These cases indicate that a tenant of a shopping center may
acquire a protectible interest in the common areas of a shopping
center with or without a specific demise in the language of the
lease." 77 Ill. App. 3d 478, 484.

The rule in Illinois is now clearly that language such as we have in the
lease in question creates an easement appurtenant over a parking area in a
shopping center, and this is the law elsewhere as well. See Annot., 56
A.L.R.3d 596 (1974).

The parties have cited no authorities which specifically apply the
rules which have developed in the shopping center cases to parking
appurtenant to an office building.[1] This court has noted, however, that
"we see no logical basis for having one set of rules for shopping centers
and a different set of rules for other contractual relationships." *Crest
Commercial, Inc. v. Union-Hall, Inc.* (1968), 104 Ill. App. 2d 110, 118.

■■ It might, of course, be argued that the furnishing of customer parking
is absolutely essential to the tenants' business in a shopping center whereas
parking in connection with the less competitive setting of an office
building is a mere convenience. (See 1 Friedman on Leases §3.2, at 32-34
(1974).) However, here the tenants have been found to have an easement
appurtenant by express contract and from that contractual relationship it
follows, in our opinion, that the use of the appurtenant parking area may
not be reduced nor substantially altered during the term of the lease.
While parking may or may not be as essential to plaintiffs' commercial
enterprise as to tenants of a shopping center, it seems doubtful that the
plaintiffs would have been willing to become the tenants of a multi-story
office building if no parking had been provided and all of its employees
would have had to park on adjacent streets. Where, as here, the lease
recognizes the right of the tenants to use the parking lot in common with
other tenants of the building, that promised use in all probability formed a
part of the bargain of the lease. In this circumstance, the same rules which
have been applied to parking in shopping centers are applicable.

The trial judge found that the lease gave the plaintiffs the right to use

---

[1] Our research has disclosed two cases from other jurisdictions which have dealt with
office building parking lots and which have denied that easements appurtenant were
created. Both cases, however, involve leases which make no mention of the parking lot. See
*Corwin v. Hamilton* (1957), 154 Cal. App. 2d 829, 317 P.2d 139, and *Telesca v. M. L. Bruenn
Co.* (1972), 71 Misc. 2d 208, 335 N.Y.S.2d 875.

the entire lot, including the 32 spaces removed by the Lessor and allocated to Coopers and Lybrand. However, he concluded that the removal of these spaces did not necessarily deprive the plaintiffs of a parking place, although they would not necessarily always find a space close to the building; that there was no proof of any direct economic or monetary loss to the plaintiffs nor disruption of their businesses; that, therefore, the gist of the plaintiffs' complaint was inconvenience short of irreparable harm which did not warrant injunctive relief. We cannot agree.

■■ The grant of an easement appurtenant as found by the trial court is a proper subject of mandatory injunction even if only minor interference is shown. *Ogilby v. Donaldsons' Floors, Inc.* (1958), 13 Ill. 2d 305, 310-11; *Schaefer v. Burnstine* (1958), 13 Ill. 2d 464, 469-70.

To show irreparable injury it is not required that the injury is beyond the possibility of compensation, nor that it must be very great. (*Newell v. Sass* (1892), 142 Ill. 104, 116.) The court also noted that the fact that no actual damages could be proved and the jury could award only nominal damages "often furnishes the very best reason why a court of equity should interfere * * *." 142 Ill. 104, 116. See also *Pradelt v. Lewis* (1921), 297 Ill. 374, 377, and *Walgreen Co. v. American National Bank & Trust Co.* (1972), 4 Ill. App. 3d 549, 556.

■■ Here, the lease gave the plaintiffs the right to park anywhere in the lot existing at the time of the original lease. They were therefore entitled to a mandatory injunction to enforce the easement appurtenant. The fact that the 32 parking spaces set aside for the use of Coopers and Lybrand in the common parking area amount to only 22 percent of the total spaces available in the common lot, whereas C & L rents 27 percent of the rentable space in the building, does not, in our judgment, affect the plaintiffs' right to secure what they bargained for. They, of course, have no rights in the additional 18-space parking area which was later furnished to C & L as the result of negotiations.

In this view we do not reach the other claims urged by the plaintiffs. The judgment is reversed and the cause remanded with directions to enter an order granting injunctive relief consistent with this opinion.

Reversed and remanded with directions.

HOPF and VAN DEUSEN, JJ., concur.