2022 IL App (2d) 210250-U
No. 2-21-0250
Order filed January 18, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| KERI BOUGIE, Individually and as Personal Representative of the Estate of Gary Bougie, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff and Counterdefendant-Appellee, | ) ) ) | |
| v. | ) ) | No. 17-CH-564 |
| BRITTANY BARTH-NIGGEMANN, LAURIE BARTH, and 54BLEU, LLC, | ) ) ) | |
| Defendants | ) ) | |
| (Brittany Barth-Niggemann and Laurie Barth, Defendants and Counterplaintiffs-Appellants). | ) ) ) | Honorable Daniel L. Jasica, Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's finding that counterplaintiffs failed to establish irreparable harm warranting a permanent injunction was not against the manifest weight of the evidence, and the trial court's denial of permanent injunctive relief was not an abuse of discretion. Affirmed.

¶ 2    Plaintiff is Keri Bougie—individually and as personal representative of the estate of her

late husband, Gary Bougie. The initial defendants were Brittany Barth-Niggemann, Laurie Barth

(Brittany's mother), Slyce Coal Fired Pizza Company (Slyce—a pizzeria in Wauconda), and 54Bleu, LLC (an LLC formed to operate Slyce). Gary, Brittany, and Laurie were 54Bleu's equal-interest members. Keri sued defendants for breach of 54Bleu's operating agreement; Brittany and Laurie counterclaimed for breach of the operating agreement. The case involved the valuation and buyout of Gary's interest in 54Bleu and Keri's use of Slyce's recipes.

¶ 3    After several iterations of the pleadings, motions to dismiss, and summary judgment motions, the operative pleadings were Keri's two-count fourth amended complaint against Brittany, Laurie, and 54Bleu and Brittany's and Laurie's two-count third amended counterclaim against Keri.

¶ 4    Following a bench trial, the trial court found in favor of defendants and against Keri on both of Keri's claims and in favor of Brittany and Laurie and against Keri on count II of the counterclaim. Those claims are not at issue in this appeal. However, the trial court found in favor of Keri and against Brittany and Laurie on count I of the counterclaim involving Keri's use of Slyce's recipes. Brittany and Laurie appeal the trial court's ruling on count I of the counterclaim. For the reasons set forth below, we affirm.

¶ 5                                    I. BACKGROUND

¶ 6    Count I of the counterclaim, entitled "Breach of Contract Concerning Use of Recipes and Related Injunctive Relief," alleged that Keri is violating 54Bleu's operating agreement by using Slyce's recipes, or substantially similar recipes derived from Slyce recipes, at another pizzeria and selling bottled salad dressings and sauces based on those recipes.

¶ 7    With respect to the relief sought in Count I of the counterclaim, Brittany and Laurie requested, in addition to all relief deemed "fair, just, and equitable," a permanent injunction prohibiting Keri from using the recipes "in any manner that expands the use of such recipes in any

manner other [than] the way such recipes were used on the date [Gary] died." Alternatively, Brittany and Laurie requested that, if the court were to determine that the operating agreement "inures to Keri's benefit *** , that [*sic*] Keri is not authorized to use recipes that are substantially similar to the recipes [Gary] created for the benefit of [Slyce] prior to August 22, 2012 [the date the operating agreement was executed], in any manner that expands on the use of such recipes on the date [Gary] died without involving Brittany as a business partner in any such business(es)." Brittany and Laurie further requested that Keri "pay appropriate damages to Laurie and Brittany that arise from Keri's current and ongoing breach of the Operating Agreement, as set forth above, in an amount to be determined at a future date."

¶ 8     A three-day bench trial commenced on March 1, 2021. We recount in relevant part the evidence presented at trial and the trial court's ruling.

¶ 9                                                    A. Trial

¶ 10     In 2010, Brittany and Laurie, as equal owners, opened a coal-fired pizzeria called Slyce in Wauconda. Prior to its opening, Brittany and Laurie hired Gary to be Slyce's executive chef. The parties stipulated that Gary developed Slyce's menu recipes. Gary subsequently sought and obtained an ownership interest in Slyce. Toward that end, in 2012, Brittany, Laurie, and Gary formed 54Bleu, LLC to operate Slyce. As the three members of 54Bleu, LLC, Brittany, Laurie, and Gary executed an operating agreement on August 22, 2012.

¶ 11                                         1. Operating Agreement

¶ 12     The operating agreement set forth the members' equal interests and their respective capital contributions. Brittany's capital contribution was $45,000 and "past services Performed to develop Restaurant concept"; Laurie's capital contribution was $90,000; and Gary's capital contribution was "Intellectual Property and past services performed to develop restaurant concept." The parties

stipulated that the intellectual property included the recipes that Gary developed as a Slyce employee.

¶ 13    The operating agreement addressed the possibility of additional restaurants. Namely, section 5.07 of the operating agreement provided in relevant part:

"The Members hereby acknowledge and agree that [Gary] and [Brittany] shall be permitted to open an unlimited number of additional pizza establishment locations employing the exact same or substantially similar concept, menu, recipes and/or name as is utilized by the Company in the operation of its pizza place *Slyce Coal Fired Pizza Company* (including without limitation, pricing, methods, recipes and coal fired pizza concept) without the involvement of any Member other than [Gary] and [Brittany] in any future location and without granting an ownership interest or other compensation whatsoever to [Laurie] in future restaurant establishments or companies or corporations that run future restaurant establishments.

In furtherance of the foregoing, the Company hereby grants an unconditional and irrevocable license to [Gary] and [Brittany] and to any entity in which they are a member, partner, shareholder, agent or owner (hereinafter the 'Restaurant Concept License') of any and all intellectual property rights owned or acquired by the Company *** and further, the Company[] [and] [Laurie] further hereby waive[] any fee or compensation with respect to said Restaurant Concept License."

Laurie testified that the initial draft of the operating agreement gave Gary alone the unfettered right to use Slyce's recipes and restaurant concept at other locations. Laurie, however, insisted on Brittany's required involvement in any future expansion opportunities, and the operating agreement was revised accordingly.

¶ 14    In addition, section 10.04 of the operating agreement set forth the procedure for a mandatory buyout of a member's interest in the event of the member's death, including the timing of the buyout and the method to determine, absent agreement, the fair market value of the deceased member's interest. The operating agreement further provided in section 13.12 that "[e]ach and all of the covenants, terms, provisions and agreements herein contained shall be binding upon and inure to the benefit of the parties hereto and, to the extent permitted by the Operating Agreement, their respective heirs, legal representatives, successors and assigns."

¶ 15    With respect to enforcement of the operating agreement, section 13.09 set forth a nonwaiver provision: "The failure of any party to seek redress for default of or to insist upon the strict performance of any covenant or condition of this Operating Agreement shall not prevent a subsequent act, which would have originally constituted a default, from having the effect of an original default." The operating agreement also included a provision, entitled "Injunctive Relief," in section 13.18, which provided as follows:

> "The parties hereby mutually stipulate and agree that the rights and interests herein created are unique and that the breach by any party of his/its obligations hereunder will likely result in damages to all other parties for which no adequate remedy at law exists. Accordingly, in the event of any such breach or default by any party to this Agreement, the aggrieved party shall have the right to obtain an order of court of competent jurisdiction enjoining any further breach and specifically enforcing the rights and obligations of the parties hereto (including without limitation, the right of any aggrieved party to acquire the Membership Interest of any other Member or Interest holder who, under the terms of this Agreement, is obligated to sell said Interest to such aggrieved party). Said right and remedy

of specific enforcement shall be in addition to and not in lieu of any and all other rights or remedies available at law or in equity."

¶ 16    54Bleu was involuntarily dissolved in 2017. However, the parties stipulated that the operating agreement controlled their relationship as to Slyce.

¶ 17                        2. White Bear Lake Pizzeria Pezzo

¶ 18    In 2013, approximately three years after the opening of Slyce and a year after execution of 54Bleu's operating agreement, Gary moved to Minnesota and partnered with Mary Ann and Kris Kowalski to open a new coal-fired pizzeria called Pizzeria Pezzo in White Bear Lake, Minnesota. The testimony at trial established Brittany's involvement in Gary's expansion of the Slyce restaurant concept at the White Bear Lake Pizzeria Pezzo. Brittany traveled regularly to Minnesota before and after the opening to work with contractors, hire and train restaurant staff, develop the menu, and market the restaurant. Brittany testified that she did not have a documented interest in Pizzeria Pezzo because the Kowalskis sought partnership solely with Gary. Nonetheless, Brittany testified that Gary assured her that he considered her to be his partner in the Pizzeria Pezzo venture and that he would honor the terms of the operating agreement. Consequently, Brittany performed work for Pizzeria Pezzo without compensation.

¶ 19    Pizzeria Pezzo opened in White Bear Lake in December 2013. A Slyce chef, Mackenzie Morrison, moved to Minnesota to assist in Pizzeria Pezzo's opening. The evidence established that Pizzeria Pezzo's menu was virtually identical to Slyce's menu and that Pizzeria Pezzo used Slyce's recipes for the overlapping menu items.

¶ 20                        3. Buyout Negotiations and Filing of Lawsuit

¶ 21    Gary died suddenly on April 18, 2014. Following his death, Keri acquired a role in operating Pizzeria Pezzo, while Brittany continued to travel to White Bear Lake to assist in

operating the restaurant. Keri was appointed the personal representative of Gary's estate on April 14, 2015, and thereafter moved to San Diego, California. Later in 2015, Keri and Brittany discussed the buyout of Gary's interest in 54Bleu and obtained informal valuations of the interest from their accountants. Meanwhile, in 2015, Keri and a potential investor were in discussions to open additional Pizzeria Pezzo restaurants, and the investor inquired as to Keri's right to use Slyce's recipes. In January 2016 e-mail exchanges, Keri and Brittany discussed the use of Slyce recipes at future Pizzeria Pezzo locations. Their discussions included the possibility of a geographical limitation on future Pizzeria Pezzo locations and the possibility of Keri's payment of a franchise or royalty fee for use of the recipes at future locations. In March 2016, Keri and Brittany exchanged formal proposed buyout agreements. Both agreements proposed a purchase of Gary's interest for $65,000, but the parties disagreed on the issue of Keri's right to use the Slyce recipes at future locations. Keri sought an unlimited right to use the recipes; Brittany sought a geographical restriction on future Pizzeria Pezzo locations to preclude direct competition with Slyce. An impasse was reached, and no buyout occurred.

¶ 22    In 2017, Keri bought out the Kowalskis' ownership interest in the White Bear Lake Pizzeria Pezzo. The owner of White Bear Lake Pizzeria Pezzo became Pezzo Per Pezzo-White Bear Lake, LLC, whose members are Pezzo Per Pezzo, LLC and chef Morrison. In turn, Pezzo Per Pezzo, LLC's sole member is Anderson Bougie, LLC, whose members are Keri and her brother.

¶ 23    Keri initiated this lawsuit on April 18, 2017.

¶ 24                                4. Woodbury Pizzeria Pezzo

¶ 25    On August 22, 2018, Keri, on behalf of Pezzo Per Pezzo, LLC, signed a lease for a second Pizzeria Pezzo location in Woodbury, Minnesota. In supplemental discovery responses, dated October 22, 2019, Keri disclosed her intent to open the Woodbury Pizzeria Pezzo in December

2019. Brittany and Laurie filed a petition for a temporary restraining order (TRO) and preliminary injunction to prevent the opening. In a December 4, 2019, written order, the trial court denied the TRO petition "for reasons stated by the Court on the record." The record does not include a transcript of the ruling. The December 4, 2019, order reflects that Brittany and Laurie withdrew the preliminary injunction request in light of the upcoming trial on all claims.

¶ 26    The Woodbury Pizzeria Pezzo restaurant opened in December 2019. The parties stipulated that neither Brittany nor Laurie have or ever had any ownership interest in the Woodbury Pizzeria Pezzo and that it is owned by Pezzo Per Pezzo Woodbury, LLC, whose members are Pezzo Per Pezzo, LLC and chef Morrison.

¶ 27    The evidence established that, when the Woodbury Pizzeria Pezzo opened, its menu was virtually identical to Slyce's menu, and it used Slyce's recipes for the overlapping menu items. However, in January 2020, Keri requested that chef Morrison change the Slyce recipes that were being used at Pizzeria Pezzo. Morrison testified regarding the modifications he made to the recipes and that he could taste the difference. However, Slyce's current chef testified that he prepared the modified recipes and did not perceive any distinction between the taste of the original and modified recipes with the exception of a more pronounced lemon flavor in the modified "horseradish aioli" recipe. In addition to the menu items, at some point after Keri initiated the lawsuit, and unbeknownst to Brittany and Laurie, both Pizzeria Pezzo locations began to sell bottled salad dressings and sauces that were derived from Slyce recipes.

¶ 28    The evidence established that, on December 18, 2019, Keri signed a letter of intent to open a third Pizzeria Pezzo in Edina, Minnesota, although the restaurant was never opened. Keri also signed a letter of intent on January 25, 2021, to open a Pizzeria Pezzo in San Diego, California. At the time of trial, no additional Pizzeria Pezzos had been opened.

¶ 29                                    5. Rule 237 Request

¶ 30    Approximately two weeks before trial, on February 18, 2021, defendants served Keri with notice to produce at trial, pursuant to Supreme Court Rule 237 (eff. July 1, 2005), documents including "[i]ncome and expense statements for Pezzo per Pezzo for the years 2014 through 2020." Keri moved to bar the production request on the ground that the notice was an improper attempt to obtain documents that were never sought in a discovery request. See Ill. S. Ct. R. 237(b) (eff. July 1, 2005) ("The notice also may require the production at the trial or other evidentiary hearing of the originals of those documents or tangible things *previously produced during discovery*.") (Emphasis added.)) The record does not reflect a ruling on the motion to bar the Rule 237 request. Keri states in her brief that "[a]t the pre-trial conference (not part of written record), Defendants acknowledged that no prior request was made, and no such records were ordered to be produced." Brittany and Laurie do not dispute this statement.

¶ 31                              6. Motion for Directed Finding

¶ 32    Following the close of evidence, Keri orally moved for a directed finding on count I of the counterclaim based upon a failure to prove damages and a failure to prove irreparable harm. During argument in opposition to the motion, the trial court and counsel for Brittany and Laurie engaged in the following colloquy:

     "MR. MORRISON [(Counsel for Brittany and Laurie)]: This is a motion for a directed verdict [*sic*], and the thrust of the directed verdict [*sic*] is a lack of proof of a method that calculates damages, but that's exactly the point of the case because we're seeking injunctive relief.

     THE COURT: Can I ask you? Are you seeking money damages?

     MR. MORRISON: No.

THE COURT: Are you seeking to—for lack of a better word—shutter the White Bear Lake Pezzo restaurant?

MR. MORRISON: No."

¶ 33    The trial court denied Keri's motion for a directed finding. The trial court reasoned: "I do think that there's been no evidence that would support a money judgment at this point, but the motion is for the entire Count 1, so I'm going to deny the motion for directed finding as to Count 1 of the counterclaim." No further evidence was presented.

¶ 34    The parties filed posttrial briefs on March 18, 2021. Following closing arguments on March 22, 2021, the trial court took the case under advisement.

¶ 35                              B. Trial Court's Ruling

¶ 36    The trial court issued an 18-page memorandum opinion and judgment order on April 8, 2021. The trial court found in favor of defendants and against Keri on both of Keri's claims and in favor of Brittany and Laurie and against Keri on count II of the counterclaim. The trial court ordered the parties to complete the buyout of Gary's one-third interest in 54Bleu, in accordance with the operating agreement, within 90 days based on a date-of-death valuation. As discussed, these claims are not at issue in this appeal. However, the trial court found in favor of Keri and against Brittany and Laurie on count I of the counterclaim alleging Keri's use of Slyce's recipes in violation of the operating agreement. We recount the trial court's findings of fact and conclusions of law with respect to its ruling on count I of the counterclaim.

¶ 37    Initially, the trial court noted that, in addition to its specific factual findings, it resolved all other credibility determinations and specific disputed facts in favor of its findings and the decision reached. In turning to Keri's use of the recipes, the trial court found "no room for doubt" that

Pizzeria Pezzo's recipes were "entirely derived from and 'substantially similar' in both ingredients, preparation procedures, and taste to Slyce's recipes."

¶ 38    The trial court also concluded that section 5.07 of the operating agreement did not give Keri the right to open additional restaurants using Slyce recipes or substantially similar recipes without Brittany's participation. Rather, section 5.07 gave Gary and Brittany the right to use the Slyce recipes and restaurant concept at "an unlimited number of additional pizza establishment locations *** without the involvement of any Member other than [Gary] and [Brittany] in any future location." Thus, the trial court reasoned, "Gary and Brittany were granted an unconditional and irrevocable license to use 54Bleu's intellectual property at 'any entity in which they are a member, partner, shareholder, agent [or] owner.' The plain language of Section 5.07 indicates that this is not a right or privilege that Gary could exercise independently of Brittany." Moreover, the trial court noted Laurie's testimony that she required a revision to the originally drafted operating agreement to require Brittany's involvement with Gary in expansion opportunities and that, in practice, both Brittany and Gary were involved in the opening and operation of the White Bear Lake Pizzeria Pezzo, consistent with this interpretation of section 5.07. Accordingly, the trial court found that "Keri's expanded use of recipes 'substantially similar' to and derived from Slyce recipes represents a breach of that contract [the operating agreement]."

¶ 39    However, the trial court found that Brittany and Laurie "offered no evidence of any damages or financial loss sustained, and their counsel has conceded they do not seek to recover damages." The trial court elaborated:

"There was no testimony of any actual damages sustained by Brittany, Laurie, or 54Bleu as a result of the Pizzeria Pezzo restaurants. There was no testimony that Slyce and Pizzeria Pezzo compete with each other in any markets or any testimony of Slyce

potentially expanding into additional competing markets, although there was testimony that Slyce now also has restaurants in Highwood and Vernon Hill[s], Illinois.

There was no testimony concerning lost customers, lost sales, or lost business by Slyce as a result of Pizzeria Pezzo opening or its use of any of Slyce's recipes. There was no testimony concerning customer confusion between the two sets of restaurants or any loss of goodwill suffered by Slyce as a result of Pizzeria Pezzo opening or using the Slyce recipes. There was no testimony concerning any loss of valuation or profits to Slyce, or to Brittany or Laurie's interest in 548Bleu or Slyce, or to any distributions therefrom as a result of Pizzeria Pezzo.

There was no testimony concerning the revenue generated by Pizzeria Pezzo Woodbury, its profitability, or any monetary loss to Brit[t]any or Keri stemming from the operation on Pizzeria Pezzo Woodbury."

¶ 40    The trial court further noted: "At trial, Brit[t]any and Laurie's counsel clarified that they are only seeking injunctive relief, not money damages, against Keri for her use of Slyce's recipes at Pizzeria Pezzo. Brittany and Laurie also acknowledged that they are not seeking to preclude or enjoin the use of Slyce's recipes at the original Pizzeria Pezzo White Bear Lake restaurant. They only seek to enjoin the use of Slyce's recipes at all other current or prospective Pizzeria Pezzo locations, including the Woodbury, Minnesota restaurant."

¶ 41    Regarding the request for injunctive relief, the trial court found that Brittany and Laurie failed to establish that they would suffer irreparable harm in the absence of a permanent injunction. Specifically, the trial court found:

"[T]he record is bereft of any substantial injury suffered by Brittany and Laurie from the actual or threatened use of Slyce's recipes or restaurant concept. Pizzeria Pezzo

operates in another state under a different and unrelated business name. Slyce does not compete with Pizzeria Pezzo. Slyce has restaurants only in Illinois and no identified expansion plans. Pizzeria Pezzo operates only in Minnesota with a contemplated expansion into California. There was no testimony of actual or threatened lost business to Slyce or customer confusion due to Pizzeria Pezzo's past or contemplated restaurants. There was no testimony of the amount of revenue or profit generated by any Pizzeria Pezzo location."

¶ 42 The trial court rejected reliance on section 13.18 of the operating agreement authorizing injunctive relief. The trial court reasoned that, while "it is true that if a *statute* authorizes injunctive relief, a plaintiff need not prove she satisfies the traditional equitable elements needed to obtain an injunction," Brittany and Laurie "cite to no authority, and the Court has found none, that permit a court to ignore consideration of these equitable factors merely because a *contract* authorizes a non-breaching party to pursue, among other relief, an injunction." (Emphasis in original.) The trial court noted that Brittany and Laurie did not assert a claim under the Illinois Trade Secrets Act, which expressly authorizes injunctive relief (765 ILCS 1065/3 (West 2020)) and pursuant to which a court, even in the absence of proof of damages, may fashion a remedy to prevent unjust enrichment and assess a royalty for the unauthorized use of a trade secret (*Id.* § 1065/4).

¶ 43 The trial court concluded that, although it "certainly appreciates the frustration that Brittany and Laurie feel as a result of Keri's continuing use of Slyce recipes and restaurant concept in Minnesota, injunctive relief will not properly lie here." The trial court further noted that it would "not speculate as to whether in the future, perhaps based on the expansion of either Slyce or Pizzeria Pezzo locations into each other's proximity, Brittany and Laurie may be able to demonstrate some sort of actual and substantial injury that would warrant injunctive relief."

However, "[a]t this time, and based on the evidence introduced at trial, Brittany and Laurie have not shown an injury sufficient to entitle them to injunctive relief."

¶ 44    Brittany and Laurie timely appealed the ruling entering judgment against them on count I of their counterclaim.

¶ 45                                    II. ANALYSIS

¶ 46    Brittany and Laurie argue that they established irreparable harm sufficient to warrant a permanent injunction to prevent Keri's use of Slyce's recipes. Keri responds that the claims of harm amounted to mere speculation. Before turning to the arguments, we address the scope of our review.

¶ 47                                A. Scope of Review

¶ 48    First, both sides argue that the opposing briefs contain factual misstatements and lack of record citation in violation of Illinois Supreme Court Rule 341(h)(6) and (7) (eff. Oct. 1, 2020). Brittany and Laurie request that we strike Keri's statement of facts or, alternatively, disregard any noncompliant statements. While both sides' briefs contain instances of inadequate record citation, the deficiencies to which the parties cite do not hinder our review. We decline to strike Keri's statement of facts and disregard any statements without record support in both sides' briefs. See *John Crane Inc. v. Admiral Insurance Co.*, 391 Ill. App. 3d 693, 698 (2009) ("[W]e will not strike a party's statement of facts unless it includes such flagrant improprieties that it hinders our review of the issues.").

¶ 49    Second, Keri devotes a significant portion of her brief to the argument that Brittany and Laurie are precluded from asserting deprivation of an interest in the Pizzeria Pezzo restaurants as the irreparable harm warranting injunctive relief. Keri argues that this theory was not advanced in the trial court; that Brittany and Laurie "are attempting to procure a remedy on appeal that

essentially awards them monetary relief via a stake in the Pezzo Entities [] even though they did not pursue damages at trial, having no evidence of the same"; and that the Pezzo entities and LLC members would be indispensable parties if an interest in the Pizzeria Pezzo restaurants were awarded. However, in their reply brief, Brittany and Laurie explicitly state that they "have never sought any type of injunctive relief or declaratory judgment that the Court should award them an actual partnership interest in the Pezzo entities." Accordingly, we disregard Keri's argument (and any argument by Brittany and Laurie that purports to seek such relief).

¶ 50    Third, Brittany and Laurie devote a significant portion of their brief to the argument that Keri breached the operating agreement by using recipes substantially similar to Slyce recipes at the Woodbury Pizzeria Pezzo and in bottled salad dressings and sauces. However, there is no dispute as to Keri's breach of the operating agreement. The trial court explicitly found that Keri's use of the recipes without Brittany's involvement was a breach of the operating agreement. Keri neither cross-appealed this ruling nor attempts to challenge this ruling on appeal. Thus, Keri's breach of the operating agreement is not at issue on appeal.

¶ 51    Brittany and Laurie nevertheless argue that the trial court erroneously found their failure to prove monetary damages from breach of the operating agreement prevented them from establishing an irreparable harm from breach of the operating agreement. The record refutes this characterization of the trial court's ruling. After finding that Keri breached the operating agreement, the trial court first noted that Brittany and Laurie presented no evidence of any monetary loss as a result of Keri's use of Slyce's recipes and explicitly sought only injunctive relief, not monetary damages, for breach of the operating agreement. The trial court then turned to the request for a permanent injunction to preclude Keri's use of the recipes, and, after considering the evidence at length, denied the request, finding the record "bereft of any substantial injury

suffered by Brittany and Laurie from the actual or threatened use of Slyce's recipes or restaurant concept." In other words, the trial court found that Brittany and Laurie proved *neither* monetary damages *nor* irreparable harm from breach of the operating agreement. The question presented for our review is the propriety of the trial court's denial of injunctive relief. We turn to that issue.

¶ 52                                    B. Irreparable Harm

¶ 53    "A permanent injunction is an extraordinary remedy." *Oak Run Property Owners Ass'n v. Basta*, 2019 IL App (3d) 180687, ¶ 62. The party seeking a permanent injunction must demonstrate: (1) a clear and ascertainable right in need of protection, (2) irreparable harm if the injunction is not granted, and (3) no adequate remedy at law. *Indeck Energy Services, Inc. v. DePodesta*, 2021 IL 125733, ¶ 64. The consideration of injunctive relief also should include a balance of the equities. *Helping Others Maintain Environmental Standards v. Bos*, 406 Ill. App. 3d 669, 688 (2010). Here, the trial court based its denial of permanent injunctive relief on the failure to demonstrate irreparable harm.

¶ 54    It is the trier of fact's role to resolve conflicts in the evidence, evaluate witness credibility, and determine the weight to be given to witness testimony. *Id.* The determination of whether to grant or deny injunctive relief rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Indeck Energy Services*, 2021 IL 125733, ¶ 64. Where a trial court's decision regarding a permanent injunction is based on pure questions of fact, however, we review the trial court's factual findings under the manifest-weight-of-the-evidence standard of review. *Bos*, 406 Ill. App. 3d at 688; see also *Vaughn v. City of Carbondale*, 2016 IL 119181, ¶ 22 ("Generally, a reviewing court will not overturn a trial court's order concerning a permanent injunction unless that order is against the manifest weight of the evidence."); *Standlee v. Bostedt*, 2019 IL App (2d) 180325, ¶ 51 ("A trial court's factual findings as to these elements

[to establish a permanent injunction] will not be reversed unless they were against the manifest weight of the evidence."). A judgment is against the manifest weight of the evidence when the findings are unreasonable, arbitrary, or not based on evidence, or when an opposite conclusion is apparent. *Vaughn*, 2016 IL 119181, ¶ 23.

¶ 55    The trial court found the record devoid of any evidence regarding injury suffered by Brittany and Laurie from the actual or threatened use of Slyce's recipes or restaurant concept. The trial court pointed out that Pizzeria Pezzo operates in Minnesota, while Slyce operates in Illinois under a distinct business name. Moreover, there was no testimony that the operation of Pizzeria Pezzo resulted in customer confusion or lost business to Slyce. And there was no testimony concerning any loss of valuation or profits to Slyce. Thus, the threatened injury amounted to mere speculation. Accordingly, the trial court found that Brittany and Laurie failed to prove that they would suffer irreparable harm in the absence of a permanent injunction. Based upon our review of the record, we cannot say that these findings were unreasonable, arbitrary, or not based on the evidence, or that an opposite conclusion was apparent.

¶ 56    Our supreme court has been explicit in its pronouncement that injunctive relief is not available where the threatened harm is based upon speculation or amounts to a "mere possibility." *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Railway Co.*, 195 Ill. 2d 356, 371 (2001). In *Callis*, a law firm hired by an injured railroad employee to represent him in action under the Federal Employers' Liability Act (FELA) (45 U.S.C. § 51 *et seq.* (1994)) sought injunctive relief against the railroad to prevent a scheduled disciplinary hearing involving the employee from proceeding. *Callis*, 195 Ill. 2d at 361-62. The employee had been charged with making false statements regarding his physical condition following the injury at issue in the FELA action. *Id.* at 361. Under the terms of the governing collective-bargaining agreement, the employee was entitled

to union representation at the disciplinary hearing, but neither the employee nor the railroad were allowed attorney representation at the hearing. *Id.* at 359.

¶ 57    The law firm filed a complaint for injunctive relief, alleging that the railroad was interfering with the contractual relationship between the law firm and the employee because the disciplinary hearing would subject the employee to questioning by railroad representatives regarding the accident for which the law firm represented the employee. *Id.* at 361-62. The law firm alleged: (1) that it would suffer irreparable harm in the absence of injunctive relief because the employee would be forced to either subject himself to questioning regarding the FELA suit without attorney representation or risk dismissal; and (2) that the law firm risked malpractice and ethical charges if the railroad were allowed to question the employee without attorney representation. *Id.* at 362. The trial court issued a temporary restraining order and, following a hearing, a preliminary injunction prohibiting the railroad from holding the scheduled disciplinary hearing. *Id.* at 362-63. The appellate court affirmed, and the supreme court allowed the railroad's petition for leave to appeal. *Id.* at 363.

¶ 58    In reversing, the supreme court held, *inter alia*, that the law firm failed to establish the irreparable harm required for injunctive relief. *Id.* at 371. The court reasoned that "[t]he gist of the law firm's claim in this case is that the law firm is concerned that the railroad will secure, during the course of the disciplinary hearing, some evidence that will render the FELA litigation more difficult for the law firm to prosecute" and that the employee could be fired as a result of the proceeding, thereby diminishing the damages that would otherwise be assessed against the railroad in the FELA case. *Id.* at 371. However, whether the disciplinary hearing would yield the prejudicial evidence or result in a termination of the employee was a matter of "pure speculation," and any

potential harm suffered by the law firm suffered because of the hearing was "too remote and speculative" to warrant injunctive relief. *Id.* at 371-72.

¶ 59     The supreme court explained that the "the right to injunctive relief rests on actual or presently threatened interference with another's rights." *Id.* at 371. Thus, " '[i]njunctive relief will not be granted merely to allay the fears and apprehensions or to soothe the anxieties of the parties.' " *Id.* at 371 (quoting 42 Am. Jur. 2d *Injunctions* § 15, at 583 (2000)). Rather, " '[t]he act to be enjoined should be actually threatened and must be such as might be expected with reasonable certainty if not enjoined.' " *Id.* (quoting 21A Ill. Law & Practice, *Injunctions* § 16, at 267 (1977)). " '[A]n injunction will not be granted on a mere suspicion of an intended wrong, or upon speculation or conjecture, or because there is a mere possibility or apprehension on the part of the plaintiff that some illegal act will be done.' " *Id.* at 371-72 (quoting 21A Ill. Law & Practice, *Injunctions* § 16, at 267 (1977)).

¶ 60     The appellate court's decision in *Sheehy v. Sheehy*, 299 Ill. App. 3d 996 (1998), is further illustrative of the principle that injunctive relief is not available where the threatened harm amounts to mere speculation. There, the plaintiff—the buyer of a funeral home—sought, *inter alia*, injunctive relief to enforce a covenant not to compete contained in the purchase agreement for the sale of a funeral home. *Id.* at 998-1000. The plaintiff alleged that the defendant—the seller of the funeral home—breached the four-year noncompete agreement by participating in business activities as the managing director of a new funeral home six months after the sale. *Id.* at 999-1000. Although the new funeral home was not located within the 10-mile restricted geographic scope of the noncompete agreement, the plaintiff alleged that the defendant had performed duties within the restricted geographic area, including attendance at two business meetings at a different branch of the new funeral home, participation in continuing education classes, and representation

of the new funeral home at cemeteries. *Id.* at 999. Following a hearing, the trial court denied the plaintiff's emergency motion to enforce the restrictive covenant. *Id.* at 1000.

¶ 61    In affirming, the appellate court held that neither the attendance at the business meetings nor the attendance at the continuing education classes within the restricted geographic area amounted to prohibited competition under the terms of the noncompete agreement and pointed out that "no adverse effect has been shown by plaintiff as a result of defendant's attendance at the classes and meetings." *Id.* at 1001. Moreover, while the defendant's attendance at meetings in a funeral home branch within the restricted geographic area amounted to a technical violation of the noncompete agreement, the effect of enjoining the defendant from attending the meetings would be *de minimis.*" *Id.* at 1002. Regarding the defendant's attendance at cemeteries within the restricted geographic area, the appellate court reasoned that any intention to prohibit entry of a cemetery within the restricted geographic area should have been expressly stated in the noncompete agreement. *Id.* at 1003. Given the strict construction of restrictive covenants, the appellate court declined to read into the noncompete agreement such a restriction. *Id.*

¶ 62    The appellate court recognized that a "threatened business interest is an identifiable right that may be protected by injunctive relief" and that " '[t]he loss of customers and sales and the *threat of the continuation of such loss* to a legitimate business interest is sufficient to show that plaintiff will suffer irreparable injury ***.' " (Emphasis in original.) *Id.* at 1005-06 (quoting *Central Water Works Supply, Inc. v. Fisher*, 240 Ill. App. 3d 952, 959 (1993)). However, the plaintiff testified that he was unable to identify any loss of business or any threat of loss of business to his funeral home as the result of the defendant's attendance at the business meetings, continuing education classes, or cemeteries located within the restricted geographic area. *Id.* at 1006. Consequently, "as no loss has been identified by plaintiff indicating a threatened business interest,

we cannot agree that he has a protectable interest for which there is no adequate remedy at law and that any irreparable injury would result if the permanent injunction is not granted." *Id.*

¶ 63    Likewise, as the trial court found here, the claims of injury from Keri's breach of the operating agreement were too speculative to establish the irreparable harm necessary to warrant the extraordinary remedy of a permanent injunction. This is not a case of two businesses operating in close geographic proximity. To the contrary, Slyce operates in Illinois; Pizzeria Pezzo operates in Minnesota. There was no evidence of competition, customer overlap, consumer confusion, or brand dilution. A mere possibility or suspicion of future competition was insufficient to warrant injunctive relief.

¶ 64    Brittany and Laurie argue, however, that a showing of irreparable injury does not require that the injury be "beyond the possibility of compensation" or that the injury be "very great," citing *Mutual of Omaha Life Insurance Co. v. Executive Plaza, Inc.*, 99 Ill. App. 3d 190, 195 (1981). In *Mutual of Omaha Life Insurance*, the plaintiffs—commercial tenants in an office building—sued the building's management company for breach of a parking-rights provision in the lease agreement after a new tenant had been given exclusive use of certain parking spaces. *Id.* at 190-91. The plaintiffs sought an injunction to allow use of the entire building parking lot. *Id.* At trial, the plaintiffs introduced testimony regarding some instances where parking was unavailable or limited for employees or customers. *Id.* at 191-92. The trial court denied injunctive relief, finding that, although the lease had been breached, the plaintiffs failed to prove direct economic or monetary loss or business disruption. *Id.* at 190-91, 194-95. Rather, the crux of the claim was mere inconvenience insufficient to establish irreparable harm. *Id.* at 190-91, 195.

¶ 65    In reversing, the appellate court noted with approval the plaintiffs' reliance on "a line of cases which hold that minimum interference with an easement appurtenant to a parking lot is

sufficient for the court to issue an injunction, even absent proof of harm." *Id.* at 193. The appellate court determined that the plaintiffs had an easement appurtenant by express contract; consequently, the use of the appurtenant parking lot could not be reduced or substantially altered during the lease term. *Id.* at 194. The appellate court also held that "[t]he grant of an easement appurtenant as found by the trial court is a proper subject of mandatory injunction even if only minor interference is shown." *Id.* at 195. Indeed, a showing of irreparable injury does not require that the injury be "beyond the possibility of compensation, nor that it must be very great." *Id.* The plaintiffs' lease gave them the right to park anywhere in the existing parking lot, and the loss of this right entitled them to a mandatory injunction to enforce the easement appurtenant. *Id.*

¶ 66　The case *sub judice* does not involve easements appurtenant. *Mutual of Omaha Life Insurance* is therefore inapposite. Moreover, we observe that the plaintiffs in *Mutual of Omaha Life Insurance* proved some harm, *albeit* minimal, from the parking restriction through testimony regarding unavailable or limited parking. Here, however, as the trial court found, there was no evidence of harm presented. In addition, nothing in *Mutual of Omaha Life Insurance* impacts the well-established principle that injunctive relief is not warranted where the threatened injury is merely speculative. See *Callis*, 195 Ill. 2d at 371-72; *Sheehy*, 299 Ill. App. 3d at 1005-06.

¶ 67　Brittany and Laurie further assert, in their reply brief and without citation to authority, that injunctive relief is warranted pursuant to section 13.18 of the operating agreement, in which the parties stipulated that an aggrieved party had the right to obtain injunctive relief to enjoin breach of the operating agreement. This argument is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (the argument in the appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on," and "[p]oints not argued [in appellant's opening brief] are forfeited and shall not be raised in the reply brief

\*\*\*."); *In re Rayshawn H.*, 2014 IL App (1st) 132178, ¶ 38 (issues not raised in the opening brief and legal arguments that are not well developed are forfeited).

¶ 68    Forfeiture aside, the argument fails on the merits. "While courts have given weight to parties' contractual statements regarding the nature of harm and attendant remedies that will arise as a result of a breach of a contract, they nonetheless characteristically hold that such statements alone are insufficient to support a finding of irreparable harm and an award of injunctive relief." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1266 (10th Cir. 2004) (collecting cases). Likewise, here, section 13.18 alone did not eliminate the need to meet the requirements for a permanent injunction, and Brittany and Laurie present no argument otherwise.

¶ 69    Brittany and Laurie nevertheless maintain that Keri's use of Slyce's recipes in expansion of the Slyce concept without providing Brittany any partnership or ownership rights in such expansion is the "loss which constitutes an injury or damage which justifies the issuance of the permanent injunction." As discussed, however, Brittany and Laurie affirmatively state that they never sought, and do not seek, a partnership interest in the Pizzeria Pezzo restaurants. Distilled to its essentials, their position amounts to an argument that Keri's breach of the operating agreement necessitated a finding of irreparable harm. However, a breach of contract does not automatically warrant the finding of irreparable harm required for injunctive relief. *Id.* at 1262-65 (collecting cases involving breaches of exclusivity provisions in distribution and franchise agreements, noncompete clauses in employment contracts, and restrictive covenants in real estate leases). Rather, the following factors may support a finding of irreparable harm from breach of such contracts: "the difficulty in calculating damages, the loss of a unique product, and existence of intangible harms such as loss of goodwill or competitive market position." *Id.* at 1264.

¶ 70    Here, Brittany and Laurie provided no evidence of threatened competition from Keri's use of the recipes, loss of goodwill, or any other intangible harm. Moreover, contrary to asserting a difficulty in calculating damages, in their brief, Brittany and Keri contend, without record support, that damage from breach of the operating agreement was "self-evident" given Pizzeria Pezzo's continued existence, profitability, and plans for expansion. However, as the trial court found, there was no evidence presented regarding Pizzeria Pezzo's revenue or profitability. Indeed, at trial, Brittany and Laurie limited the relief sought to injunctive relief. The trial court found that Brittany and Laurie failed to establish irreparable harm from Keri's use of Slyce's recipes in violation of the operating agreement. Based upon our review of the record, we cannot say that this finding was against the manifest weight of the evidence. Accordingly, the trial court's denial of permanent injunctive relief was not an abuse of discretion.

¶ 71                                    III. CONCLUSION

¶ 72    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 73    Affirmed.